## MARION *against* FAXON.

A court of law, in the construction of an instrument, will correct a palpable mistake, and give it the meaning plainly intended by the parties.

Therefore, where the declaration in an action on an officer's receipt, after stating the attachment of the property by the plaintiff, alleged, that in consideration that he had delivered the property to the defendant, at his request, to be kept by him, the defendant promised to deliver it to the plaintiff, on demand; and the writing given in evidence was, " received of *M*, constable, the following articles attached by me," specifying them, " which I am to deliver to said *M*, on demand;" it was held, that the word " me," in the receipt, was obviously a mere misprision, being inserted instead of *him*, which would refer to the plaintiff; and thus construed, there was no variance.

The undertaking of the defendant, in such case, was not a promise to answer for the debt, &c. of another person, within the statute of frauds.

A discovery made in answer to a motion of the adverse party, can be used by the party making it, so far only as it is responsive to the motion.

Therefore, where the prayer of a motion by the plaintiff, was, that the defendant should disclose whether the plaintiff had made a demand of him; and the defendant, after admitting the demand, went on to say, that the undertaking declared on, was without consideration, &c.; it was held, that such discovery was evidence of no other fact than the demand.

A creditor of two joint debtors has a right to secure his claim, by attaching the property of both, or either of them.

Therefore, where *A*, in a suit against *B* and *C*, his joint debtors, directed the officer to attach the property of *B*, and not of *C*, which he did; and afterwards, he put the property so attached into the hands of *D*, and took from him a receipt, promising to redeliver such property on demand, without informing *D* of the direction given by *A* in relation to the attachment; in an action brought by the officer, on such receipt, against *D*, it was held, that such attachment was no violation of the rights of *B* or *C*, and the want of such information to *D*, was not a constructive fraud.

THIS was an action of *assumpsit*, founded on an officer's receipt. The declaration consisted of two counts. The first was abandoned by the plaintiff.

The second, after stating the plaintiff's official character as a lawful constable of the town of *Stonington*, alleged, that on the 8th day of *October*, 1846, a writ of attachment, duly signed and directed, was delivered to him, to serve and return according to the exigency thereof, by which he was commanded to attach, to the value of 325 dollars, the goods or estate of *Ezra W. Thayer*, and *Mark Glines*, of said *Stonington*, partners, under the firm of *E. W. Thayer & Co.*, and them to summon to appear before the county court to be held at *Norwich*, in and for the county of *New-London*, on the second *Tuesday* of *November*, 1846, to answer unto *Henry P. Yeomans*, in an action of book debt, demanding the sum of 325 dollars ; that by virtue of such writ, the plaintiff, as constable, attached, of the proper goods and estate of said *Thayer*, 400 pairs of ladies' kid slippers, of the value of 200 dollars, and 75 pairs of men's calf boots, of the value of 125 dollars, and returned said writ to said court ; that the plaintiff, having so attached said shoes and boots, and taken them into his possession, and holding them to satisfy the judgment that should be recovered in said suit, on the 8th day of *October*, 1846, at the special instance and request of the defendant, delivered to him, the defendant, said shoes and boots, to be by him kept and delivered to the plaintiff, whenever they should be by him thereafter demanded ; and in consideration thereof, the defendant, then and there, undertook, and to the plantiff faithfully promised, to deliver to him said shoes and boots, whenever thereafter of him, the defendant, demanded ; that in *June*, 1847, judgment was rendered, by said court, in said suit, in favour of said *Yeomans*, against said *Thayer* and *Glines*, for 203 dollars, 35 cents, damages, and 22 dollars, 32 cents, costs, for which execution was issued, and put into the hands of the plaintiff, as constable, to serve ; that by virtue thereof, the plaintiff, on the 9th day of *August*, 1847, made demand of said *Thayer* to pay and satisfy the same, and both he and said *Glines*, who was out of the state, neglected so to do ; that on the next day, the plaintiff demanded of the defendant said shoes and boots, but he, then, and at all times thereafter, neglected and refused to deliver said shoes and boots, or any

or either of them, to the plaintiff; that the plaintiff afterwards returned the execution wholly unsatisfied ; and that, by reason of the premises, he has been rendered liable to pay the amount thereof to said *Yeomans.*

The defendant pleaded the general issue, with notice, that under such issue, he should give evidence to show, that *Yeomans,* the plaintiff, in the original suit, instructed the present plaintiff not to collect the execution of *Glines,* but of *Thayer* and the present defendant.

The cause was tried at *New-London, September* term, 1849.

On the trial, the plaintiff offered in evidence, to prove the facts alleged in his declaration, a receipt signed by the defendant, of which the following is a copy : " *Stonington, October* 8th, 1846.    Received of *William A. Marion,* a constable of the town of *Stonington,* the following articles, attached by me, belonging to *Ezra W. Thayer,* in favour of *Henry P. Yeomans,* of *Providence, R. 1.,* which I am to deliver to said *William A. Marion,* on demand : 400 pairs of ladies' kid slippers, at 50 cents per pair—$200.    72 pairs of men's calf boots—$125.        [Signed.]                *Elisha Faxon.*"

To the admission of such receipt, in evidence, the defendant objected, on the ground that it proved facts variant from the facts stated in the declaration ; and because it was not such a *memorandum* or note in writing, as is required, by the statute of frauds and perjuries, in such a contract ; and because it is ambiguous and uncertain on its face.   In connexion with this receipt, the plaintiff also offered in evidence the record of the proceedings in said suit of *Yeomans* v. *Thayer & Glines.*    To the admission of this evidence the defendant also objected ; but the court overruled said objections, and admitted all the evidence.

The defendant claimed, that it was proved, by the answer of the defendant to the motion of the plaintiff, seeking a disclosure, that such receipt was merely nominal, and was not given for any valuable consideration, and prayed the court so to instruct the jury.    But the court declined so to instruct them, and said to them, that said disclosure was not evidence of any facts stated in it, which were not called for in the motion for a disclosure ;  and therefore, was not evidence to

prove, that said receipt was given upon a nominal consideration.

New-London,
July, 1850.

Marion
v.
Faxon.

The motion of the plaintiff for a disclosure here referred to, after stating the proceedings in the suit of *Yeomans* v. *Thayer & Glines*—particularly, the attachment of the boots and shoes, the delivery thereof to *Faxon*, the present defendant, and his undertaking to keep them safely, and redeliver them, when demanded, the recovery of the judgment against *Thayer & Glines*, the proceedings under the execution, including the demand of *Faxon*, for the property attached, and his refusal to deliver it—prayed, that said *Faxon* should disclose, under oath, as to the demand so made by the plaintiff of him, for the delivery of the property so attached—whether such demand was not made of him—and that he should make a full disclosure in the premises, pursuant to the provisions of the statute.

In answer to this motion, the defendant made the following statement: " According to my present recollection, some time in *October*, 1846, I went into the shoe-store of *Ezra W. Thayer*, in *Stonington*. There, *Marion*, the present plaintiff, stated, that he had a writ of attachment in favour of *Henry P. Yeomans* against said *Thayer* and *Mark Glines*, demanding—I cannot now say from recollection how much, or to what court returnable—but do recollect, that the sum was not so large as to be at all hazardous to sign a receipt as for goods attached on the same ; believing, as I then did, and now understand, that said *Glines* was, and is, abundantly responsible for much more than the sum demanded in said writ ; and at the request of said *Thayer* and *Marion*—one or both, and I think both, but am not positive—I signed a receipt, but not for any boxes of shoes or boots, and am quite sure, boxes of boots and shoes were not named. I think the receipt named a quantity of ladies' slippers, and men's calf boots—I cannot say how many, but am confident, a much larger number than were then in the store. None were actually delivered me, by said *Marion* or *Thayer ;* and I never received any boots or shoes, on account of said attachment or receipt, as no such quantity (if any) were attached as I receipted. The receipt was merely nominal. I then understood it was a question whether anything was due, or would be found due, to said *Yeomans*, as I then and now know said

*Glines* was not in the habit of being sued for debt, but is, and has been, a man of property. I cannot say when the plaintiff called on me relative to said receipt. I believe, however, more than once. I do not recollect distinctly, that he made demand of the property named in said receipt, though I do not say he did not make such demand, because he has stated that he has made such demand. Further, in one or several of these conversations about this receipt, (and we had several, during or about this time,) I do distinctly recollect his reply to my question why he did not collect of *Glines*, (though he and *Thayer* had then both left the state—*Glines* then had property here, and has it now,) his reply was, that he was ordered, by said *Yeomans*, not to collect of *Glines*, but of *Thayer*, or on this receipt; and this, in substance, the present plaintiff has repeated many times since, in my hearing, and in the hearing of others."

In the progress of the trial, the defendant claimed to have proved, that *Yeomans* instructed the plaintiff not to attach the property of *Glines*, on the original writ, but to attach the property of the other defendant, *Thayer*; and prayed the court to instruct the jury, that in case they should find, that the plaintiff had been so instructed, by *Yeomans*, and unless they should find, that such instruction was communicated to the defendant, at the time of signing such receipt, such instruction was a fraud on the defendant. But the court declined so to charge the jury, and charged them, that *Yeomans* had a right to give such instruction to the plaintiff.

The jury returned a verdict for the plaintiff, for the amount of said execution, and the interest thereon; and the defendant thereupon moved for a new trial.

*Hill* and *Pomeroy*, in support of the motion, contended, 1. That the receipt in question was not admissible to prove the facts alleged in the declaration. In the first place, the receipt, which is the contract on which the action is founded, must be predicated upon the process, must be sustained by it, and must be conformed to it, or the plaintiff's declaration is not proved. Secondly, the receipt does not describe the writ, or any writ, by the name of the parties, by the date, or the court to which it was returnable. The most that can be inferred concerning the writ, as described or alluded to in the

receipt, is, that it was one in favour of *H. P. Yeomans.* Is this enough ? Does it correspond with the statement in the declaration ? Thirdly, the receipt is materially variant from that described in the declaration, because the declaration states an attachment made by *Marion*, the present plaintiff, whereas the receipt states an attachment made by *Faxon*, the signer of the receipt. The words are, "attached by *me*." This cannot mean by *him* attached. Fou.thly, if there is an *ambiguity* in this receipt, it is a *patent* ambiguity, which cannot be varied or explained, by extrinsic evidence. *Bunnel* & ux. v. *Taintor's* adm'r. 5 *Conn. R.* 273. 277. Fifthly, if there is a *mistake* in the receipt, it can be reformed only in chancery. Sixthly, as it is, the variance is palpable, and not only does not support, but contradicts the statement in the declaration. *Bunnel* & ux. v. *Taintor's* adm'r. 5 *Conn. R.* 273. 277. *Wilmot* v. *Munson*, 4 *Day*, 114. *Curley* v. *Dean*, 4 *Conn. R.* 259. *Rossiter* v. *Marsh, Id.* 196. *Rossiter* v. *Downs, Id.* 294.

2. That the disclosure is in conformity to the requirements of the motion ; which called for a *full* disclosure *in the premises.*

3. That if the facts disclosed are to be considered as legally proved, this action cannot be sustained. First, because there was *no consideration* for the promise. 1 *Sw. Dig.* 191. Secondly, because it was not such a note in writing as is required, by the statute of frauds, to validate a promise to pay for the debt or duty of another. Before the receipt, *Faxon* was not liable at all. 1 *Sw. Dig.* 248. *Nichols* v. *Johnson*, 10 *Conn. R.* 192.

4. That if the receipt was merely nominal, and *Yeomans* directed the plaintiff to collect the debt of *Thayer*, and not of *Glines*, and this direction was kept from the present defendant, at the time the receipt was given, it was a *fraud* on him ; and so the court should have instructed the jury. The suppression of an important fact, by one of the contracting parties, avoids the contract.

*Strong*, contra, contended, 1. That there was no variance between the receipt offered in evidence, and the contract set forth in the declaration. In the first place, the different parts of the receipt must be construed together, so as, if possible, to

*New-London, July, 1850.*

Marion
*v.*
Faxon.

give a consistent meaning to the whole. " Attached by *me*," under the circumstances apparent upon the face of the receipt, could mean only, attached by *the officer*. But secondly, if construed *literally, non constat* that *Faxon* had not himself attached the property, subject to the plaintiff's attachment ; and that he had thereupon given a receipt to the plaintiff. As to the objection that the defendants in the suit were not named in the receipt, this was immaterial. Notwithstanding this omission, enough was stated to identify the suit.

2. That the statute of frauds presents no obstacle to a recovery. In the first place, this was not a contract to pay the debt of another ; but the plaintiff, having delivered property which he had attached, to the defendant, at his request, he received it, and agreed to return it to the plaintiff. This was not a *collateral* undertaking. But secondly, the receipt contains all which would have been necessary, if it were within the provisions of that statute.

3. That the prayer for a disclosure related, not to the contract, or its consideration, but was confined to the question, whether a *demand* had been made upon the receipt. As to *this*, the defendant was required to answer *fully*. The expression, " in the premises," relates to the *demand*, and to that only.

4. That the defendants, in the former suit, not offering any property either on the attachment or execution, *Yeomans* had the right to direct what personal property of theirs, or of either of them, the officer should take. It does not appear, that *Glines* had any property ; or if he had, whether it was personal or real, or of what value, or whether free from incumbrance.

Storrs, J. The first count in the declaration, being abandoned by the plaintiff, may be disregarded : and the first question presented is, whether there was any material variance between the contract described in the second count, and that produced in support of it on the trial. The claim of a variance in the first count between the number of boots which it alleges that the defendant received of and promised to redeliver to the plaintiff, is not applicable to the second count, in which the number of that article is stated to be the same as that in the contract adduced in evidence. But the de-

fendant claims, that as the phrase in the latter, "attached by *me*," imports, that the property to which it related was attached by the defendant, it rendered that instrument variant from the description of it in that count, which states it to have been attached by the plaintiff. If the defendant is correct in this construction of the contract, it lays no foundation for an objection on the ground of a variance between the contract and the description of it in the declaration. The declaration does not profess to recite the contract, and therefore there is no room for any claim of a literal discrepancy; it professes only to describe it according to its legal import and effect. After stating the attachment of the property by the plaintiff, it alleges, that in consideration that he had delivered the property to the defendant, at his request, to be kept by him, &c., the defendant promised to deliver it to the plaintiff, on demand. It describes the general character of it, as it is described in the contract, as being 400 pairs of ladies' kid slippers, and 72 pairs of men's calf boots. It had previously stated, for the purpose probably of shewing the plaintiff's title to it, that it had been attached by him. This however is a statement merely of a fact, not an allegation of description, because it does not profess to state, that it appeared, by the contract declared on, by whom the property had been attached. Whether it was necessary that it should appear, either in the count or in the contract, that it had been attached, or by whom, we need not here consider, because that point has not been made, either on the trial or before us; and indeed, if it was, it would present a question, not of variance, but of a different kind. If the phrase in the contract, importing that the property had been attached by the defendant, is to be considered as descriptive of it, in the same sense as if it had stated it to be of a particular colour, rather than as a statement of an immaterial circumstance attending it, which, in no respect, varied its character or qualities, as if it had added that it had been bought of *A. B.*, it would not necessarily be a description of different property, but might be a different description of the same property; and a difference in the description of it would involve no contrariety. The attachment, as claimed to be stated in the contract, is entirely consistent with the contract described in the declaration. Here, therefore, was no variance. If it

*New-London,*
July, 1850.

Marion
*v.*
Faxon.

was requisite for the plaintiff to prove an attachment by him, as alleged in the declaration, the most that can be said, is, that the contract itself does not prove this fact; and therefore, it would be necessary to adduce other evidence of it. Whether such evidence was adduced, does not appear. It would be presumed, that it was, since there is no complaint in that respect, and no question is made on the subject.

But we are of opinion, that the just construction of the contract is not such as the defendant claims. It is obvious on its face, that the word " me," contained in it, is a mere misprision, and inserted by mistake, instead of " him," which would refer to the plaintiff. It explains itself readily, by supposing what is most probable, that the plaintiff wrote the body of the contract, without adverting to the circumstance that it was to be signed, not by himself, but another person. We ought, in the construction of the instrument, to correct this palpable mistake, and give it the meaning plainly intended by the parties.

The record in the case in which the property mentioned in the receipt of the defendant, was attached, was clearly admissible in support of the averments in the declaration, and the objection to it made by the defendant on the trial, has not been much pressed before us; nor the objection there made to the contract declared on, founded on the statute of frauds. It was plainly not within that statute.

The plaintiff's motion for a disclosure called for no discovery, excepting as to the fact of a demand by him of the defendant of the property mentioned in the receipt of the latter; and the ruling below, that the disclosure was evidence as to no other fact, was correct. The frame of the prayer in the motion for a disclosure " in the premises," taken in connexion with what preceded it, clearly shews, that that phrase related only to such demand. The principle is well settled, that the disclosing party can use the discovery so far only as it is responsive to the petition. There was therefore no legal evidence adduced by the defendant to shew that his receipt was merely nominal; and hence it is unnecessary to consider what would be the effect of that fact, if proved.

The defendant, on the trial, claimed to have proved, that the plaintiff in the suit on which the property of *Thayer,* one of the defendants in that suit, was attached, directed the

plaintiff in this suit to attach the property of that, but not of the other defendant in that suit; and thereupon insisted, that such direction, if not communicated to him, at the time of executing said receipt, constituted a fraud on him, which would preclude a recovery. But the court declined so to charge the jury; and we think, correctly. A creditor has a right to secure a claim against his joint debtors, by an attachment of the property of both or either of them. The attachment of the property of one only, being therefore no violation of the rights of either of them, we perceive no reason why it is incumbent on the creditor, or the officer acting on his behalf, to inform the receipter of the property of such direction, or why the want of such direction should be deemed a constructive fraud. The receipter is cognizant of the rights of the creditor; and by enquiry, he may obtain such information as he wishes, in order to determine whether he will assume the obligation of receipting the property. If any actual fraud has been practised on him, it would, as in other cases, avoid his contract. No such claim was made in this case.

A new trial is not advised.

In this opinion the other Judges concurred.

*New trial not to be granted.*