RAILWAY V. WILLIAMS.

Decided March 15, 1890.

*Railway toll-bridge—Property of company other than railway—Mode of assessment.*

Where a bridge corporation, owning a railway toll-bridge, grants the use thereof for the period of its corporate existence to a railway company, reserving its corporate franchise and the right to contract with other parties for the use of the bridge, the bridge should be assessed by the county assessor as the property of the bridge company and not by the state board of railway commissioners as the property of the railway company.

APPEAL from *Sebastian* Circuit Court in Chancery, Fort Smith District.

JOHN S. LITTLE, Judge.

The St. Louis and San Francisco Railway Co., a corporation organized under the laws of Missouri and owning a continuous line of railroad from St. Louis, Mo., to Paris, Tex., running through the counties of Benton, Washington, Crawford and Sebastian in the State of Arkansas, and the Fort Smith and Van Buren Bridge Co., a corporation organized under the laws of Arkansas, brought suit against John F. Williams, collector of Sebastian county, to determine which of two assessments for taxation of the railroad bridge spanning the Arkansas river at Van Buren, Arkansas, was valid.

By the provisions of an act of Congress, approved July 3, 1882, plaintiff railway company was "authorized to construct, or cause to be constructed, and maintain a bridge and approaches thereto over the Arkansas river at the town of Van Buren, Crawford county, Arkansas." The act provided (section 4) that "all railroad companies desiring the use of said bridge, shall have and be entitled to equal rights and privileges relative to the passage of railway trains over the same and over the approaches thereto."

For the purpose of constructing and maintaining such bridge, plaintiff bridge company was organized on the 25th day of March, 1885, its corporators being officers and stockholders in plaintiff railway company. Thereafter the railway company executed to the bridge company a deed for the approaches of the bridge on both sides of the river, reciting that the grantee was authorized and empowered by virtue of its articles of association, of the laws of the State of Arkansas and of an act of Congress to construct, maintain, operate and own a highway and railroad bridge across the river.

On the 1st day of April, 1885, the bridge company, to raise money to construct the bridge, executed its bonds to the amount of $500,000, which were guaranteed by the railway company. To indemnify the latter against loss, the bridge company executed a mortgage upon the bridge and its approaches and transferred its entire capital stock as a pledge. At the same time the bridge company executed a written agreement styled a "contract or lease," which conveyed, granted, demised and let to the railway company, its successors and assigns, the bridge to be constructed, with its approaches and other appurtenances, for the term of ninety-eight years from April 1, 1886, the railway company agreeing to pay a fixed toll or "rental" for passage of its trains. In the lease the bridge company expressly reserved to itself its corporate franchise and the right to contract with other parties for the use of the bridge, but only on condition that the written consent of the said railway company be first had and obtained.

On April 6, 1886, the bridge company entered into a written agreement with the Little Rock and Fort Smith Railway Co., whereby the latter company was to have the right to use the bridge and approaches for railway purposes for and during the term of thirty years. The contract was approved by plaintiff railway company.

The state board of railway commissioners, in assessing

the railroads in the State for the year 1887, valued the bridge at $263,000.00 and assessed it as part of appellant's roadway, apportioning the total assessed value to the four counties, Benton, Washington, Crawford and Sebastian, according to the mileage of the road in the respective counties named.

The assessor of Sebastian county assessed the half of the bridge lying in Sebastian county, valuing it at $100,000.00. The other half of the bridge, lying in Crawford county, was assessed by the assessor of that county at the same valuation. The clerk of Sebastian county extended upon the taxbooks both the assessment made by the county assessor and that apportioned to the county by the state board of railway commissioners.

Plaintiffs brought suit against the collector, offering to pay the taxes legally due on the bridge, alleging that the assessment by the county assessor was void and asking that defendant be restrained from collecting same. They filed a supplemental complaint alleging that the assessment by the state board was void and asking that the defendant be restrained from collecting it.

The circuit court decided that the bridge and its approaches were the property of the bridge company and assessable by the county assessor, under section 5645 of Mansfield's Digest; that the action of the state board in assessing said bridge property was without authority and void. The court, therefore, perpetually enjoined the sheriff from collecting any taxes from the railway company by reason of any assessment of the bridge by the state board. It denied the prayer of plaintiffs for an order enjoining the collector from collecting the taxes from the bridge company by reason of the assessment of the county assessor. Plaintiffs appealed.

*Clayton, Brizzolara & Forrester* for appellants, with whom are *McDaniel & McGill* and *E. B. Wall.*

The bridge was constructed under a charter from Congress

to the railway company.   22 U. S. St. at Large., 144.   The railway has never conveyed its franchise to the bridge company; but the bridge company has conveyed all its proprietary rights, simply stipulating to be allowed to exist, and the railway company assumed the payment of all taxes.

Railroads, by the laws of this State, are required to be assessed as an entirety, and cannot be taxed by the separate counties through which they run.   Sec. 5649, Mansf. Dig.; Acts 1887, secs. 21, 23, etc.;   1 Desty on Tax., 392, and note 8;  46 Ark., 312;  96 Am. Dec., 272;  75 Ill., 616, etc.

For the purpose of taxation the bridge belongs to the railroad company.   Mansf. Dig., sec. 5649; Acts 1887, sec. 21, p. 155; Acts 1881, p. 79; secs. 5420, 5549, Mansf. Dig.;  Cooley on Taxation (2d. ed.), 385, note 3; 86 Ill., 352; 2 Rorer on R. R., 1507, par. 23, note 2;  62 Ill., 395; 45 Ohio St., 577;  7 A. & E. R. R. Cas., 238;  8 Heisk., 812;  50 Md., 274-397.

The use, nature and character of the property and not the ownership determine whether the same should, under the laws of this State, be assessed and valued by the state board or by the local assessor.   If the structure is a railroad bridge and used for that purpose, it does not matter by whom built or owned.   19 Fed. Rep., 177;  47 Iowa, 196;  37 A. & E. R. R. Cas., 406;· 25 A. & E. R. R. Cas., 522;  10 Peters U. S., 53.

The revenue laws prescribe the manner and mode of assessing railway property.   Mansf. Dig., secs. 5648 to 5659, etc.; Acts 1887, pp. 154 to 160.   It can be assessed in no other manner.   The bridge is realty, and for purposes of taxation is denominated railroad track.   Mansf. Dig., secs. 5648-50; Acts 1887, p. 155;  7 A. & E. R. R. Cas., 325; 56 Am. Dec., 526;  118 Ill., 134;  74 N. Y., 365.

If railroad property owned by a railroad company is only to be assessed by the state board, and similar classes of property used for railroad purposes exclusively, owned by pri-

vate corporations other than a railroad company, are to be assessed in another way or manner than that provided by the general law for the assessment of railroad property as a class, then such a construction is in violation of art. 16, sec. 5 of the Constitution, and such laws would not be uniform as to the class upon which they operate. 92 U. S., 575; 13 Fed. Rep., 722 and note p. 786; 13 A. & E. R. R. Cas., 182; 101 U. S., 153; 118 U. S., 394.

Being a railroad bridge, used exclusively for railroad purposes, situated upon the right of way and appurtenant thereto, and adding to the value thereof, it could only be assessed by the state board. Cases *supra*.

The theory adopted by nearly every State in the Union for taxation of railroad property is to consider the entire road and everything upon its right of way as a unit.

In determining the classification of the property of railroads, the *nature, character* and use, and not the *ownership*, of it is the criterion.

But the railroad is the *owner* of the bridge. The bridge company conveyed to the railway company all its *proprietary* interests in the bridge and its approaches. The railway has possession and control for ninety-eight years. The interest of the railway being superior to that of the bridge company constitutes it the owner for purposes of taxation.

*Clendening & Read* and *L. P. Sandels* for appellee.

1. The bridge company is the owner of the bridge, and not the railroad company. Under the laws of Arkansas, the *ownership*, and not the use, is the criterion by which to determine how the bridge should be taxed, and as the bridge is owned by a corporation organized under the laws of Arkansas, it should be taxed as the property of other corporations are taxed, by the local officers of the counties where situate. Acts 1887, p. 153, secs. 17, 19, 21, 23; Const., art. 16, sec. 5.

Where it is declared by the legislature that the property

of certain corporations shall be taxed in a particular manner, the court has no power to say it shall be taxed in a different manner.   47  Iowa, 201;  92 U. S., 506;  18 Wall., 231; Desty, Taxation, 392.

The bridge and its approaches are not right of way or road-bed owned by any railroad company, and hence the state board has no authority to assess it.   See 41 N. W. Rep., 246;  63 Cal., 467, affirmed in 127 U. S., 1.

2.   The lease simply means this, that the railroad company has a simple contract or license to cross its trains on the bridge.   It is not a lease, because a lease is a contract for *possession* and *profits* of lands and tenements, for life or term of years.   Bouvier, L. D.;  4 Kent, Com., 97;  4 Kent, Com., 108;  Taylor, Land and Ten., 24.

Any construction of the instrument which would make it a lease or a consolidation would render it *ultra vires* and void.   102 Ill., 493;  2 Desty, Tax., 394.   The consent of the State is essential.   2 Morawetz, Corp., 940.

COCKRILL, C. J.   It is argued that the bridge in question should be assessed for taxation to the appellant railway, because it is used by that railway as a railway bridge; but it is also used by the Little Rock and Fort Smith Railway, and, if the use to which the structure is devoted is to control the question of its assessment, it could as well be assessed as a part of the latter railway as the former.   That shows the fallacy of the contention.   It is not the use that property is put to that determines to whom it is assessable; the ownership, or, under some circumstances, the control of the property, is the statutory test.   Only railways are to be assessed by the state board of railway commissioners.   Bridge companies and corporations other than railway and insurance companies are to be assessed by the local assessors.   The statute so enacts.   Secs. 5647 *et seq.*, Mansf. Dig., as amended by the act of March 28, 1887.   The requirement as to railways

is that every corporation or other person "owning or operating" a railway shall return its road to the state board for taxation; and in estimating the value the board is required to take into consideration everything on the right of way and appurtenant to the railroad which adds value to it as an entire thing. Bridges which are on the line of the railway and are railway property are therefore to be assessed as an integral part of the railway. They fall within the exclusive jurisdiction of the state board, and the increased revenue which is derived from the road on account of them is apportioned to the several counties through which the road runs. This comes from the legislative policy of taxing each road as a unit. *St. Louis etc. Ry. v. Worthen*, 52 Ark., 529. But the policy is equally well defined to tax bridges, which are not railroad property, through the instrumentality of the local assessors. There is no attempt to classify bridges so as to make railroad toll bridges, which are not the property or controlled by railroad, taxable by one agency, and other highway toll bridges by another. If, therefore, the bridge in question belongs to a company other than a railway and is operated by it as a toll bridge for the convenience of all railways that meet at that point, it does not come within the letter or the reason of the statute for the assessment of railways. It is not contended that the bridge company is either the owner or operator of a railroad. The question is, does the railway own or operate the bridge as a part of its road, or is it owned or operated independently of the railway?

It was built by the Fort Smith and Van Buren Bridge Company which was incorporated under the laws of this State to operate a railway and other highway toll bridge. It is argued that the bridge company is only an agency of the railway company, and that they are practically one. In proof of this we are referred to the fact that the stock-holders of the bridge company are stock-holders of the railway, and that the entire stock of the bridge company was

pledged at its inception to the railway company. But the partial identity of stock-holders does not merge two separate legal entities into one, and the pledge of the stock is shown to have been made as security for a loan of credit by the railway—a transaction which the statute sanctions.

The agreement may afford the railway company a ready means of acquiring the control or ownership of the bridge, but it did not in itself confer such rights. There is nothing to show that the railway company is the substantial owner of the bridge by reason of owning the stock, and the case is therefore unlike that of the *State v. St. Paul etc. Co.*, 43 N. W. Rep., 840, upon which the appellants rely.

But the bridge company has entered into an agreement with the railway for the use of its bridge for the full period of its right to corporate existence; and it is argued that it has thus transferred all its rights and interest to the railway, except the right to a naked and somewhat ambiguous existence, thereby giving the railway the ownership or absolute control of the property. But the contention is too broad. Neither the legal effect of the language of the agreement nor the practice of the parties under it justifies the conclusion.

It will be seen from the terms of the agreement, set forth in the statement of facts by the Reporter, that the bridge company expressly reserves the right to contract with other parties for the use of the bridge. Without this reservation, the granting part of the instrument would have been sufficient to carry the exclusive control of the bridge and so make it practically a part of the railway. But the intention of the parties is to be gathered from the whole instrument, and the comprehensive terms used in the granting part are narrowed and limited by the subsequent reservation. *Varner v. Rice*, 44 Ark., 236. The railway company stipulates for the right to reject contracts made by the bridge company with others for the use of its bridge, and it is argued that the power thus

given it nullifies, or puts in the power of the railway to nullify, the reservation of the bridge company's right to contract with others, and so leaves the railway with the same power under the contract as though it were written without it. It is not to be presumed that it was the intention of the parties to confer upon the railway the power arbitrarily and without reason to prevent the bridge company from entering into further contracts for the use of its bridge, for that would make the right to do so, which was reserved in the contract, utterly meaningless. But it is a rule of construction that none of the terms of a contract shall be rejected as meaningless or as irreconcilable with others, when from a fair intendment effect can be given to all. Experience has taught that this is more consonant as a rule with the intention of contracting parties. It is not likely that they will deliberately insert terms into their agreement which are intended to be of no effect. The assent of the railway was doubtless thought necessary to put a check upon the regulations of the bridge company about the passage of trains, when a second company should come into the use of the bridge. It is more natural to suppose that it was given as a protection to the railway company against the encroachments of new comers upon the bridge, than as an arbitrary veto upon the company's right to make new contracts. Moreover, the act of Congress authorizing the construction of the bridge provides that it may be used by any railway company, and we are to presume that the parties contracted with reference to the observance of the condition rather than its violation. But to say that the meaning of the contract is to give the first railway the power to exclude all others, would not be in keeping with that rule. That that was not the construction placed on the agreement by the parties is shown by the subsequent grant to the Fort Smith Railway of the right to use the bridge for thirty years.

In this light the meaning of the contract is that the rail-

way company has acquired only the privilege of passing its trains over the bridge. That, as we have seen, does not make the bridge railroad property; nor does it put the railroad in the attitude of operating the bridge as a part of its road.

This is not a case of an attempt to escape taxation, but it is important to the parties and the counties on the line of the railway to ascertain by which of the two schemes devised by the State for assessment for taxation it is governed. As it falls within the class which the legislature has provided shall go to the local assessors, it is not the province of the courts to put it elsewhere. The decree should therefore be affirmed.