## IRWIN v. NICHOLS.

### Opinion delivered July 6, 1908.

1. CONTRACTS—CLERICAL MISPRISION.—Words which are omitted by inadvertence from a written contract may be supplied by construction at law, without resort to reformation, if the contract shows what words are omitted. (Page 100.)

2. SAME—SUPPLYING OMITTED WORDS.—A letter evidencing a contract of employment stated: "We are willing to allow you 10 hours for each day that we work a full day, both winter and summer, but we can promise to give you work at $2.50 per day when the mill is not running, as we cannot afford it; however we do not expect for the mill to stand much of the time." *Held,* that the omission of the word "not" before the word "promise" is an inadvertence which the context easily supplies. (Page 100.)

Appeal from Randolph Circuit Court; *J. W. Meeks,* Judge; affirmed.

#### STATEMENT BY THE COURT.

This was an action brought by appellant to recover from appellee $189.75 as balance due him under a contract for labor. He alleges in his amended complaint that defendant is a Minnesota corporation doing business in this State, having its principal place of business for this State at Pocahontas in Randolph County; that defendant is engaged in saw-milling and allied businesses; that in October, 1906, plaintiff was in the employ of a sawmill company at Knobel, Arkansas, getting $3 a day for each day he worked; that on October 15, 1906, he received from

87—4

defendant through their Pocahontas office a proposition in writing whereby defendant proposed to employ plaintiff at their Pocahontas saw mill and pay him $2.50 a day straight time; a copy of defendant's written proposition was filed with complaint as "Exhibit A"; that plaintiff immediately accepted said proposition by means of a letter written and deposited by him in the postoffice at Knobel, inclosed in an envelope sealed and sufficiently stamped for carriage .to defendant's Pocahontas office known as Pocahontas Bending Works, to whom the letter was plainly addressed; that said letter of acceptance is not in plaintiff's possession; that, pursuant to the contract thus made, plaintiff gave up his employment at Knobel, and at great expense to himself moved to Pocahontas, where he offered himself ready at all times to perform the duties assigned him by the defendant from November 1, 1906, until July 3, 1907; that during a large portion of this time defendant's mill was not run, and, although he held himself ready at all times to perform such duties as defendant should assign him, yet defendant has refused and still refuses to pay him for any of the time defendant's sawmill has been idle; plaintiff further alleged that it was the promise of steady employment where he would not have to lose his wages during breakdowns or times of high water that induced him to accept defendant's offer of employment; that he was receiving a greater price per day at Knobel than he was promised by defendant, but because at Knobel he had to lose the time the mill was idle while he was promised straight time by defendant, he left his job at Knobel and accepted defendant's offer; that he has been paid for all his time while in defendant's employ only $335.25, while he was in such employment for 210 working days, for which he is entitled to $2.50 a day, making a total of $525.00, leaving a balance due him by defendant of $189.75, for which he prayed judgment.

"Exhibit A" to the amended complaint is in words and figures as follows:

"Pocahontas Bending Works,
"Manufacturers of Wooden Wagon Stock, Oak and Hickory
Spokes, Gum and Hardwood Lumber.
"J. C. Miller, Manager.
"Pocahontas, Arkansas, Oct. 15, 1906
"Fred Irwin, Knobel, Ark.
"Dear Sir:

"We have your letter of the 14th, and note that you have decided to come back and work for us, and we are willing to allow you .10 hours for each day that we work a full day, both winter and summer, but we can promise to give you work at $2.50 per day when the mill is not running, as we cannot afford it. However we do not expect for the mill to stand much of the time. Please answer this, and let us know about what time to expect you.

"Yours truly,
[Signed]     "Pocahontas Bending Works,
"By. J. C. M."

Defendant demurred to the amended complaint on the grounds,. first, "that it states no cause of action against defendant;" and second, "that, the action being founded on an alleged written contract for straight time and a copy of the alleged contract being filed, defendant submits that said contract so pleaded shows on its face that plaintiff has no cause of action, and that no breach of such contract is shown by complaint."

The court sustained the demurrer; and dismissed plaintiff's amended complaint and adjudged the costs against plaintiff.. To this ruling plaintiff saved due exceptions and appealed to this court.

*Henderson & Campbell*, for appellant.

The meaning of the contract being ambiguous, it was not proper for the court to construe it, but testimony should have been admitted to explain its meaning. Here was a mixed question of law and fact, which should, under proper instructions from the court, have been submitted to a jury. 9 Cyc. 591; 35 Ark. 156; 46 L. R. A. 679; 21 L. R. A. 645.

A contract is to be construed as unfavorably as its terms will permit against the party who proposed and prepared it. 73

Ark. 342. See also 9 Cyc. 590; 74 Ark. 41; 4 Ark. 199; 30 L. R. A. 720; 32 N. Y. 413.

*Witt & Schoonover* for appellee.

Appellant is bound by the terms of the letter, not a detached portion, but the whole taken together. Thus construed, there is no ambiguity or uncertainty about its meaning. 9 Cyc. 591; *Id.* 579, 580, 583. Where there is no doubt, there is no room for construction. *Id.* 578.

WOOD, J., (after stating the facts). The letter which appellant exhibits and makes the basis of his complaint is fatal to his cause of action. We must construe it as a whole, and, considering all of its parts, read it so as to make it intelligible if it can be done. *Kelly* v. *Dooling,* 23 Ark. 582; *Railway* v. *Williams,* 53 Ark. 58. For we must assume that the author of the letter intended that it should convey some meaning. "Words which are omitted by inadvertence from a written contract may be supplied by construction at law, without resort to reformation, if the context shows what words are omitted." 2 Page on Contracts, § 1125; *Richelieu Hotel Co.* v. *International Military Encampment Co.,* 140 Ill. 248, s. c. 33 Am. State Rep. 234.

The omission of the word "not" before the word "promise" is a plain inadvertence, or clerical misprison which the context itself readily and naturally supplies. Otherwise the different parts of the latter are not only contradictory, but absurd and meaningless. No one could read the letter without seeing that the word "not" was intended to be used before the word "promise." *Gran* v. *Spangenberg,* 53 Minn. 42, s. c. 54 N. W. 933; *Wallis Iron Works* v. *Monmouth Park Association,* 19 L. R. A. 456; *Sisson* v. *Donnelly,* 36 N. J. L. 432; 9 Cyc. 585, note 30.

The court did not err therefore in sustaining the demurrer; and, as appellant did not offer to amend, the judgment dismissing the complaint is affirmed.