POTTHOFF v. SAFETY ARMORITE CONDUIT CO.

(Supreme Court, Appellate Division, Second Department. February 24, 1911.)

1. CONTRACTS (§ 147*)—CONSTRUCTION—INTENTION OF PARTIES.

To carry out the intention of a contract, words may be transposed, rejected, or supplied, if necessary to make its meaning more clear.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

2. EVIDENCE (§ 458*)—CONSTRUCTION—PRIOR NEGOTIATIONS.

The court in case of doubt as to the meaning of a contract may consider prior negotiations between the parties to aid in determining the true meaning.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2083; Dec. Dig. § 458.*]

3. PATENTS (§ 218*)—TRANSFERS—CONTRACTS—ROYALTIES—CONSTRUCTION.

A contract by the holder of a patent for electro-galvanizing, whereby defendant is given the exclusive right to use the process on pipes, and which stipulates that he will pay a royalty of 50 cents per 1,000 feet "on all pipes electro-galvanized during the term for an output of five million feet or less per year, and for all pipes of an output over five million feet per year at the rate of 30 cents per 1,000 feet," payments to be made monthly, and that he will pay on a minimum output of 3,000,000 feet per year $1,500 per year, payable in monthly installments, irrespective of output being less than 250,000 feet during the previous month, etc., calls for two rates of payment, one of 50 cents per 1,000 feet on 5,000,000 feet of the output, and 30 cents per 1,000 feet on the balance of the output, and at the end of the current year all monthly advances must be adjusted.

[Ed. Note.—For other cases, see Patents, Dec Dig. § 218.*]

Appeal from Trial Term, Kings County.

Action by Gerhardt Potthoff against the Safety Armorite Conduit Company. From a judgment of dismissal on the merits, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Louis Salant, for appellant.

Francis H. Kinnicutt (George Whitefield Betts, Jr., on the brief), for respondent.

BURR, J. On December 15, 1904, the United States Electro-Galvanizing Company, plaintiff's assignor, entered into a contract with defendant by which defendant was given the exclusive right to use on iron and steel electrical conduit pipes a process of electro-galvanizing and electro-plating, which the said company controlled under letters patent of the United States. The right of plaintiff to recover the sum claimed in this action depends upon the construction to be put upon

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the third clause of said contract, the material part of which is as follows:

"Third. The party of the second part hereby agrees to pay during the above term for the license hereby granted a fee or royalty of 50 cents per 1,000 feet on all pipes electro-galvanized by it during the said term for an output of five million, or less, feet per year and for all pipes of an output of over five million feet per year at the rate of 30 cents per 1,000 feet; payments to be made monthly, on the tenth day of each month, commencing January 10, 1905, for the business done during the month next preceding and to be accompanied by a duly attested statement showing the amount of business done during the said month. The party of the second part agrees to pay to the party of the first part on minimum output of three million feet per year, to wit, at least $1,500.00 per year, payable in monthly installments of $125.00 in advance, this amount to be paid monthly, irrespective of output being less than 250,000 feet during the previous month; but at the end of each contract year adjustment shall be made so that the actual amount paid during the year shall be at the stipulated royalty figure based on output, provided however, said royalty for the year shall not be less than $1,500.00."

The learned counsel for the respondent in his brief fairly states the controversy in this language:

"The respondent maintains, and the court below has found, that * * * payment is to be regulated by the total output per year, so that when the output in the year is less than 5,000,000 feet the payment is at the rate of 50 cents for every thousand feet of such output, but when the output in a year is more than 5,000,000 feet then the payment is 30 cents for every thousand feet of such output. The appellant claims, however, that the clause is to be construed as calling for two rates of payment when the output in the year exceeds 5,000,000 feet, namely, 50 cents a thousand feet on 5,000,000 feet of the output and 30 cents a thousand feet on the balance of the output."

We think that the language of the clause in question sustains appellant's contention. To carry out the intention of a contract, words may be transposed, rejected, or supplied, if necessary, to make its meaning more clear. Jones on Construction of Contracts, 302; Jackson v. Topping, 1 Wend. 388, 396, 19 Am. Dec. 515. Let us transpose the order of the words of the first sentence of the clause in question, so that it reads:

"The party of the second part hereby agrees to pay during the above term for the license hereby granted on all pipes electro-galvanized by it during said term a fee or royalty of 50 cents per 1,000. feet for an output of five million feet or less per year, and for all pipes of an output of over five million feet per year at the rate of 30 cents per 1,000 feet."

It now appears quite clearly that the entire price is not made to depend upon an "output" of more or less than 5,000,000 feet yearly. The first clause uses the term "output"; the second does not use the same term. It says "all pipes of an output of over five million feet." The first relates to the whole product; the latter to a part only, and to that part of the whole product which consists of pipes in excess of 5,000,000 feet. The conclusion that this is the meaning which defendant intended plaintiff's assignor should put upon the contract is strengthened by defendant's conduct prior to the making thereof. In cases of doubt as to the meaning of a contract, prior negotiations between the parties may be considered to aid in the determination thereof. Wald's Pollock on Contracts (3d Ed.) 308; Kennedy v. Porter, 109 N. Y. 526, 544, 17 N. E. 426; Greenfield v. Gilman, 140 N. Y. 168,

174, 35 N. E. 435. The contract as originally drafted by plaintiff's assignor contained these words:

"The party of the second part hereby agrees to pay during the above term for the license hereby granted a fee or royalty of 50 cents per 1,000 feet on all pipes electro-galvanized by it during the said term" up to 5,000,000 feet per year, and "for all pipes in excess of 5,000,000 feet per year at the rate of 30 cents per 1,000 feet."

As it then stood, there could be little doubt as to the contract price. The draft of this proposed contract was returned by defendant with a letter, which contained these words:

"The contract submitted, while pretty nearly right, would, however, admit of a few changes which in a way are not essential, but we would prefer to have them covered. There are some clauses in the contract that are ambiguous and it is our opinion that the copy which we submit herewith would be entirely satisfactory to you, and we would say that it will be to us, and we would therefore ask your acceptance of same in substitution of the other form."

The proposed draft with the proposed amendments subsequently became the executed contract. There were other changes proposed in the contract as originally submitted, to which the words "not essential" and "ambiguous" might fairly apply. The clause in the proposed contract with regard to price was not ambiguous, and such a radical change as defendant now insists the amended contract accomplished was far from "not essential." It may result in changes amounting to several thousand dollars a year. If the price was not to be as clearly expressed in the first proposed contract, defendant should have made equally clear in the second contract what it understood respecting the same. With such clear statement, if defendant insisted upon the price proposed by it, the minds of the parties might never have met. A party has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage. Fowkes v. Manchester & London L. A. & L. Ass'n, 32 L. J. (N. S.) 153, 159; Barlow v. Scott, 24 N. Y. 40; Tallcot v. Arnold, 61 N. Y. 616; Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292; Stanton v. Erie Railroad Co., 131 App. Div. 879, 116 N. Y. Supp. 375.

The adjustment clause above quoted contains nothing inconsistent with this view. The contract provided for a monthly payment in advance of $125 irrespective of the amount of the monthly output, and a yearly minimum payment of $1,500 irrespective of the amount of the yearly output. If, for instance, in the month of April, 1907, 500,-000 pipes had been galvanized, the monthly payment must be made upon that basis. If in May no pipes were galvanized, still a monthly payment of $125 would be due, although the output for April would be sufficient in the yearly computation to fill the quota for both months. At the end of the current year all these advances would be adjusted and settled.

The judgment appealed from must be reversed, and a new trial granted; costs to abide the event. All concur.