[Civ. No. 20132. Second Dist., Div. One. June 16, 1954.]

F. J. HEIDLEBAUGH, Appellant, v. DON MILLER
et al., Respondents.

Getz, Aikens & Manning and DeWitt Morgan Manning for
Appellant.

Sidney Fischgrund and Alvin R. Isenberg for Respondents.

MOSK, J. pro tem.*—Respondents purchased certain trac-
tors and trailers from appellant on a conditional sales contract

for a total price of $26,527, of which $1,027 was paid at the time of execution of the contract on September 29, 1951, leaving a balance of $25,500 to be paid in 51 consecutive weekly installments of $500 each.

One of the trailers subsequently was destroyed and appellant, through an assignee, received $2,100 from an insurance company, this sum being applied on the contract. No other sums were paid by the respondents or credited to their account. In February, 1952, the remaining equipment was repossessed by appellant, removed to the business premises of one V. P. Hunt at Redlands, and sold to Hunt for $12,000.

This lawsuit was then commenced to recover the unpaid balance on the contract, less credits for the aforementioned $2,100 and $12,000.

Paragraph 2 of the conditional sales contract executed by the parties provided as follows:

''Should Purchaser fail or neglect to comply with any term or condition of this contract, or to make any payment provided for herein, when due or payable, or violate any of the provisions hereof, or should Purchaser become financially involved, or if Seller should feel insecure or deem the property in danger of misuse or confiscation, or in case of any unusual or unreasonable depreciation in the value thereof, or in case Purchaser has made any misrepresentation as to his name, address or occupation, Seller at his option, and without notice to Purchaser, may declare the whole amount unpaid hereunder immediately due and payable, or Seller may, without notice to Purchaser, declare all of Purchaser's rights under this contract terminated, and without demand first made, and with or without legal process, immediately take possession of said property, together with all additions, equipment and accessories thereto, wherever the same may be found, using all necessary force so to do, and hold the same, together with title thereto, and Purchaser waives all claims for damages due to or arising from, or connected with any such taking. Should Seller take possession of such property, all the rights of Purchaser under this contract shall immediately terminate, and all payments theretofore made hereunder shall belong absolutely to Seller, and Purchaser shall pay to Seller all instalments then delinquent upon this contract; upon any such termination, Seller may, if he so desires, but shall not be obliged so to do, sell said property at public or private sale, *with or with notice* to Purchaser (if given, notice by mail to Purchaser's address as given on this contract being

sufficient), with or without having such property at the place of sale, and upon the terms and in such manner as Seller, or his assigns, may determine, and Seller or his assigns, may bid at any such sale. The net proceeds of any such sale shall be the remainder after deducting from the Selling price all expenses for re-taking and conditioning, keeping and selling such property, including the attorney's fees aforesaid. In case the net proceeds from such sale, added to the payments theretofore made hereunder, do not cover the total payments required to be made by Purchaser hereunder, then Purchaser agrees to pay to Seller, on demand, such difference, with interest thereon from the date of sale at highest rate for which parties may lawfully contract in the State in which this contract is executed. Purchaser hereby waives all statutes of limitation in any way affecting the time within which Seller may enforce its rights hereunder and the defense thereof." (Italics ours.)

The contract in its entirety, except for typed insertions, was a printed form. At the bottom thereof was a notation, "No. 152—Law Ptg. Co., 4505 W. 1st, L.A. . . .," indicating it to be a form commonly available in stationery stores.

At the conclusion of appellant's case respondents moved for a nonsuit on the ground that no notice of sale to the purchasers had been given as required by the language of the conditional sales contract: "Seller may, if he so desires, but shall not be obliged so to do, sell said property at public or private sale, *with or with notice* to Purchaser . . ." (Italics ours.) The trial court sustained the position of respondents and granted the motion for nonsuit.

Appellant urges that the letters "out" were inadvertently omitted from the printed form of contract, that they should be read into the instrument by the court so that the crucial phrase would become "with or without notice," that pursuant thereto no notice of sale was required, but that in any event there was sufficient testimony indicating oral notice to respondents to require denial of the motion for nonsuit. He has therefore appealed.

■ Ordinarily it is presumed that the parties read and understood the import of their contract and that they had the intention which its terms manifest. As a general rule, the office of interpretation or construction is to ascertain the intention of the parties exclusively from the words which they have used, and not to insert what has been omitted, or to omit what has been inserted. (Code Civ. Proc., § 1858.)

But the words employed and the purpose of a writing must be ascertained solely from a common-sense meaning of them as a whole. A contract, and its component parts, must be given a reasonable rather than an unreasonable construction. (*Broome* v. *Broome*, 104 Cal.App.2d 148, 157 [231 P.2d 171].) In so doing we must bear in mind that words should be employed merely as a means and not as an end. Language, it has been said, is but the dress of thought.

Therefore, as stated by the court in *McNeil* v. *Graner*, 91 Cal.App.2d 858, 863-864 [206 P.2d 38]: "The general rule which should be applied is stated in 17 Corpus Juris Secundum, page 725, as follows: 'Where it is clear that a word or term has been used inadvertently, and it is clearly inconsistent with, and repugnant to, the meaning of the parties, it will be rejected altogether. Conversely, where, by inadvertence, words are plainly omitted from a contract, they may be supplied by construction if the context indicates what they are.' Mr. Williston says, volume 3, revised edition, page 1781: 'The court will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable; and if this is impossible an interpretation which gives effect to the main apparent purpose of the contract will be favored. Indeed, in giving effect to the general meaning of a writing, particular words are sometimes wholly disregarded, or supplied, or transposed. . . .' "

This rule appears to be universally accepted. If necessary to carry out the intention of a contract, words may be transposed, rejected, or supplied, to make its meaning more clear. (*Potthoff* v. *Safety Armorite Conduit Co.*, 143 App. Div. 161 [127 N.Y.S. 994, 995].)

In this field, the use of the words "or" and "and" interchangeably in legislation and contracts has been the subject of frequent animadversion on the part of courts. In fact, so often has this particular problem arisen, it was said in *Arnold* v. *Hopkins*, 203 Cal. 553, 563 [265 P. 223], that the solution "has come to depend almost wholly upon the context in which one or the other of these words appears . . ." To the same effect are *Washburn* v. *Lyons*, 97 Cal. 314 [32 P. 310], and *Abbey* v. *Board of Directors, etc. Irr. Dist.*, 58 Cal.App. 757 [209 P. 709]. Also see *Kasun* v. *Todevich*, 71 Mont. 315 [229 P. 714], in which "or" was substituted

for "in" because a phrase with the latter was "meaningless in the connection in which it is employed."

There are numerous examples of substitution of words in order to arrive at an intelligible text. In *Schroeder* v. *Gruggs*, 80 Kan. 357 [102 P. 469], a negative was read as an affirmative. In *Butler* v. *Bohn*, 31 Minn. 325 [17 N.W. 862], "eleven hundred" became "eleven hundred dollars." In *Cornell* v. *Green*, 95 F. 334, "north" was read to be "south." In *Marion* v. *Faxon*, 20 Conn. 486, "me" was construed to mean "him." In *Nusbaum* v. *Hartford Fire Ins. Co.*, 276 Pa. 526 [120 A. 481], "of" became "thereof."

There are also a great many illustrations of additional words being inserted to complete a phrase. In *Gran* v. *Spangenberg*, 53 Minn. 42 [54 N.W. 933], "one" was placed before "hundred and fifty dollars." In *Wallis Iron Works* v. *Monmouth Park Assn.*, 55 N.J.L. 132 [26 A. 140, 19 L.R.A. 456, 39 Am.St.Rep. 626], the crucial word "fail" was added. In *Pacific Surety Co.* v. *Toye*, 224 Mass. 98 [112 N.E. 653], the amount of yearly premium was judicially written into a blank space. In *Hamilton* v. *Wead*, 122 Neb. 854 [241 N.W. 556, 559], the words "then" or "thereafter" were said to be implied. In *Mondou* v. *Lincoln Mut. Casualty Co.*, 283 Mich. 353 [278 N.W. 94, 96], the word "by" was included to complete an important sentence. In *Kaifer* v. *Georgia Cas. Co.*, (9th Circ.) 67 F.2d 309, "additional" was inserted in front of "assured."

Factually comparable to the instant case is *Irwin* v. *Nichols, Dean & Gregg*, 87 Ark. 97 [112 S.W. 209], particularly in that an omitted word completely altered the contractual obligation. There a letter relied on as a contract of employment read (p. 209): "We are willing to allow you 10 hours for each day that we work a full day both winter and summer but we can promise to give you work at $2.50 per day when the mill is not running . . ." The court held omission of the word "not" before the word "promise" was a plain inadvertence, correction of which the contract itself readily and naturally accomplished.

Missing words supplied in the cases generally fall into two categories. The first are those words, the omission of which through ellipsis is sanctioned by usage for the sake of brevity, and which are necessarily understood to complete grammatical construction. An apt illustration is this quotation from *Hamilton* (p. 559): "Two things cannot be first. In the

sentence 'We will first go to the opera and to supper' the word 'then' is understood.''

The second category are those in which the omission is patently an inadvertence or clerical misprision. A splendid example of this is *Lincoln Joint Stock Land Bank* v. *Bexten*, 129 Neb. 422 [261 N.W. 845], in which to the phrase "part of the second part" the letters "ies" were supplied to make it read "parties of the second part."

The instant case falls into the latter class. It should be obvious to all reasonable men that the letters "out" were inadvertently omitted from the end of the third word in the printed expression "with or with notice."

The interpretation of terms in any particular case is controlled by the context of the writing, and the whole instrument must be examined. (*Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 768 [128 P.2d 665].) As respondent insists, in so doing we employ an objective, not a subjective test. (*King* v. *Stanley*, 32 Cal.2d 584, 591 [197 P.2d 321].)

Paragraph 2 of the conditional sales contract involved herein uses the expressions "with or without legal process" and "with or without having such property at the place of sale." The same paragraph twice uses the word "without" immediately preceding the word "notice" and once additionally preceding the word "demand."

The foregoing suggests a pattern of phraseology with which "with or without notice" would have been consistent, "with or with notice" an inexplicable redundancy.

It might be contended, though respondent has not done so, that it is just as conceivable the words "with or" were erroneously included as it is the letters "out" were erroneously excluded. If that were the situation, however, and notice was thus necessary, the clause in parentheses following the one in question would indeed be strange: "(*if given*, notice by mail to Purchaser's address as given on this contract being sufficient)." That language appears to be more consistent with optional rather than required notice.

Were we to adopt respondent's strict interpretation of words we would be subverting the only reasonable interpretation of the instrument as a whole. No court should slavishly bow before meaningless words. The terms employed in a writing must be made the servants and not the masters of a perspicuous intent.

Having read into the contract the phrase "with or without

notice," we find it unnecessary to discuss at length whether there was prima facie evidence of actual notice given by appellant. Bearing in mind that on motion for nonsuit, however, "the rule is almost axiomatic that the court is bound for the purpose of the motion to accept and treat as true every piece of evidence which tends to establish the plaintiff's case and to reject all which tends to disprove it" (*Williamson v. Pacific Greyhound Lines*, 78 Cal.App.2d 482, 485 [177 P.2d 977]), there was sufficient indication of notice to have required a denial of the motion for nonsuit.

Respondents have raised several affirmative defenses which merit consideration on the retrial of this cause.

The judgment of nonsuit is reversed.

White, P. J., and Drapeau, J., concurred.