[Civ. No. 20368. First Dist., Div. Two. Oct. 22, 1962.]

ANN EDE, Plaintiff and Respondent, v. RUSSELL S. EDE, Defendant and Appellant.

Ferrario, Power & Morgan and Raymond A. Ferrario for Defendant and Appellant.

Carlson, Collins, Gordon & Bold and Grant G. Calhoun for Plaintiff and Respondent.

AGEE, J.—On May 28, 1959, the federal government levied upon plaintiff for back income taxes incurred by her and her former husband, the defendant herein, for the years 1953 and 1954. She paid the amount of the levy, $4,016.49, and then recovered a judgment herein against defendant for the amount so paid. Defendant has appealed from such judgment.

On July 14, 1955, during the pendency of a divorce action between them, the parties executed a property settlement agreement whereby plaintiff received the family home and furnishings therein, two life insurance policies, balance due on a sale of real property, and an automobile. Defendant received three meat businesses operated under his name, one panel delivery truck, two automobiles, a house trailer, two life insurance policies, and a lot adjacent to the family home, including a shed thereon and the tools, equipment and implements stored therein. Provision was also made in the agreement for the support by defendant of plaintiff and their two children, aged 17 and 11 years, respectively, and the maintenance by defendant of two insurance policies on the lives of the two children.

The parties executed the agreement in the presence of each other and their respective attorneys, who signed the agreement as witnesses. The validity of the agreement is not questioned. The divorce became final in July, 1956.

The only issue on this appeal is the effect to be given clause 7 of the agreement, which provides as follows: "Party of the second part hereby agrees to pay all of the outstanding community bills incurred by the parties hereto up to and including the 14th day of February, 1955, save and except any indebtedness that may be due on that certain real property hereinabove transferred and conveyed to first party, and agrees to keep first party free and harmless from any and all claims of creditors for such indebtedness."

Following a nonjury trial, the court made findings that "at the time said agreement was entered into there were outstanding federal income taxes due and owing to the United States Government for the years 1953 and 1954 . . .," and that defendant has "failed and refused to pay said taxes or interest although demand had been made therefor," and that "plaintiff has been required to pay the same for said years. . . ." These findings are not questioned.

Defendant's sole contention is that "the federal income taxes do not come within the meaning 'outstanding community bills' as used in Paragraph 7 of property settlement

agreement dated July 14, 1955." He testified that he had no knowledge of the income tax delinquency at the time of the execution of the agreement. He does not claim that his wife had any. such knowledge either. Defendant admitted that there was nothing said by anyone about what were the "community bills" he was to pay. The record is as follows: "Q. Was there any conversation that day between the four [defendant, plaintiff and their respective attorneys] as to what bills you [defendant] were to pay? A. No."

 The rule is well settled that: "If fraud, mistake, or accident is not charged, and a contract is clear and explicit, involves no absurdity, and contains no ambiguity or uncertainty, it will be interpreted and the intention of the parties ascertained solely from the language employed." (12 Cal. Jur.2d 330, § 121, "Language of Instrument.")

 In the instant case, there is no allegation or evidence of any fraud, mistake, or accident, but merely a lack of knowledge of the existence of a particular outstanding community obligation. Both parties were adequately represented by attorneys. By the terms of the agreement, defendant clearly and unequivocally assumed responsibility for all outstanding community debts, with the one exception specified in clause 7. There was no attempt made to describe or limit the debts which defendant was assuming.

Defendant's position is that "had he [defendant] known of this big delinquency that was going to be on this income tax he would not have given her [plaintiff] all of the property he did." However, it would have been a simple matter to specify or describe the nature of the bills which he was agreeing to pay. He demonstrates this by describing these bills as being "such outstanding bills as household, gas and lights, water bills and bills incurred at stores, around Oakland and Walnut Creek."

Section 1638 of the Civil Code provides: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Section 1639 of the Civil Code provides: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title."

Defendant, however, cites section 1636 of the Civil Code, which provides as follows: "A contract must be so interpreted as to give effect to the *mutual* intention of the parties as it existed at the time of contracting, so far as the same is

ascertainable and lawful.'' (Emphasis ours.) He also quotes: ''However broad may be the terms of a contract, it extends only to those things concerning which it appears that the par*ties* intended to contract.'' (12 Cal.Jur.2d 330; italics ours.)

There is no evidence whatsoever that plaintiff had any intention to limit ''the outstanding community bills'' to any particular type or class of debts. Certainly, the defendant's undisclosed unilateral intention to so limit his liability would not be binding upon plaintiff.

Moreover, in interpreting the agreement, our inquiry is directed to the meaning of the *words used*, rather than any undisclosed independent intention of the parties. (See *Barnhart Aircraft, Inc.* v. *Preston*, 212 Cal. 19 [219 P. 20] ; *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13].)

Defendant complains that the result reached by the trial court is inequitable. In *Southern California Gas Co.* v. *Ventura Pipe Line Constr. Co.*, 150 Cal.App.2d 253, 257 [309 P.2d 849], the court quotes with approval from an Illinois case, as follows: '' 'It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined from the words used; and courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein.' '' Our Supreme Court, in *Apra* v. *Aureguy*, 55 Cal.2d 827, 830 [13 Cal.Rptr. 177, 361 P.2d 897], adopted and approved this same quotation.

We do not wish to be understood, from the foregoing, as inferring that the result reached below is inequitable. Plaintiff was left with two children, a home with a mortgage, a 1955 automobile, two small life insurance policies, and an undisclosed balance due on a sale of real property, plus $350 per month for the support of herself and children. From what appears in the agreement and the record, it could well be concluded that defendant was better able to pay the tax lien than was plaintiff. In any event, in our opinion, he agreed to do so and is bound by his agreement.

The appeal from the order denying a new trial is dismissed, it not being an appealable order.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1962.