**Richard L. ADAMS, Jr.,**
**Plaintiff–Appellant,**

v.

**Elliott KASTNER; Tessa Kennedy,**
**Defendants–Appellees.**

**No. 02–56944.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2004.

Decided March 19, 2004.

George A. Kaufman, Law Offices of George A. Kaufman, Manhattan Beach, CA, Robert K. Richardson, Esq., Odin, Feldman & Pittleman, Fairfax, VA, for Plaintiff–Appellant.

Brian N. Beyer, Esq., Santa Monica, CA, Joseph L. Golden, Esq., Law Offices of Joe Golden, Los Angeles, CA, for Defendants–Appellees.

Before: B. FLETCHER, PREGERSON, and BRUNETTI, Circuit Judges.

MEMORANDUM *

Richard L. Adams appeals from the district court's order granting Elliott Kastner's motion to enforce a settlement agreement between them and dismissing the diversity action with prejudice. Adams is Kastner's judgment creditor, having obtained a $1.3 million judgment against Kastner in the United States District Court for the Eastern District of Virginia ("the Virginia judgment"). Seeking to enforce the Virginia judgment, Adams sued Kastner and Kastner's wife, Tessa Kennedy, to enforce the judgment against real property in California and New York that Kastner had allegedly fraudulently transferred to Kennedy. The parties entered into a settlement agreement, which is the subject of this appeal.

Adams argues that Kastner's attempt to provide the full settlement amount–by tendering a supplement to the proceeds from the agreed-upon sale of a residence in Beverly Hills, California–was not provided for in the settlement agreement; that he should therefore be allowed to pursue payment of the full balance of the Virginia judgment from Kastner; and that the district court erred by interpreting the terms of the settlement agreement to prevent him from doing so. We disagree, and affirm the district court's decision.[1]

We have jurisdiction under 28 U.S.C. § 1291, and review the district court's interpretation of the contract de novo. *Jor-*

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts, we include here only those facts necessary to explain our decision.

*gensen v. Cassiday,* 320 F.3d 906, 914 (9th Cir.2003); *Shaw v. City of Sacramento,* 250 F.3d 1289, 1293 (9th Cir.2001). Under California law, settlement agreements are interpreted according to contract principles. *Weddington Prods., Inc. v. Flick,* 60 Cal.App.4th 793, 71 Cal.Rptr.2d 265, 276 (Cal.Ct.App.1998); *Nicholson v. Barab,* 233 Cal.App.3d 1671, 285 Cal.Rptr. 441, 447 (Cal.Ct.App.1991). As the point of departure in interpreting any contract, "the court should strive to ascertain its object as reflected in the provisions thereof." *Harris v. Klure,* 205 Cal.App.2d 574, 23 Cal.Rptr. 313, 315 (Cal.Ct.App.1962) (citing, *inter alia,* CAL. CIV.CODE §§ 1636, 1638). The object of the agreement is also referred to as the "expressed objective intent of the parties." 1 CAL. JUR.3D (REV) Part 1 Accord and Satisfaction § 70.

In this case, the object of the settlement agreement was to settle the balance due on the judgment debt, $1.3 million plus accrued interest, for $890,000 plus interest. The agreement provided for a judicial sale of the Beverly Hills residence if the first method for procuring the settlement amount failed. But instead of the judicial sale, the parties subsequently agreed to a private market sale. The proceeds of the market sale fell short of the settlement amount by $5,388.85.

Once Kastner became aware of the amount of the shortfall, a mere two days after escrow closed on the residence, he tendered the amount necessary to reach the full settlement amount. Adams refused to accept Kastner's tender, and insisted on pursuing Kastner for the full balance of the Virginia judgment, an amount in excess of $267,000. This harsh and inequitable approach is incompatible with a fair and reasonable interpretation of the settlement agreement construed as a whole. *See Harris,* 23 Cal.Rptr. at 315; *Transamerica Ins. Co. v. Sayble,* 193 Cal.

App.3d 1562, 239 Cal.Rptr. 201, 203 (Cal. Ct.App.1987). As the district court noted, the main object of the agreement was "to discharge [Adams'] claim against Defendant Kastner for an agreed-upon amount."

AFFIRMED.

BRUNETTI, Circuit Judge, dissenting:

The facts of this appeal are straightforward. In 1999, the United States District Court for the Eastern District of Virginia entered judgment in favor of Richard Adams and against Elliott Kastner in the amount of $1.3 million. The federal judgment arose out of loans made by Adams to Kastner that were unpaid. Adams initiated the underlying suit against Kastner and his wife, Tessa Kennedy, after learning that there was a residence in Beverly Hills, California that Kastner had allegedly fraudulently transferred to Kennedy. Adams claimed Kastner conveyed legal title to the residence in Beverly Hills and placed legal title to two apartments in Rancho Mirage, California and two condominiums in New York in Kennedy's name in order to avoid creditors.

Adams alleged three causes of action: (1) declaratory judgment that the Beverly Hills residence, the Rancho Mirage apartments, and the New York condominiums are Kastner's property subject to the Virginia judgment; (2) action to set aside the fraudulent conveyance of Kastner's interest in the Beverly Hills residence to Kennedy; and (3) liability of community property to satisfy the Virginia judgment. The parties entered into a settlement agreement in order to forgo the litigation against all five of the properties in Kennedy's name.

The parties' settlement agreement at issue in this appeal is exceptionally clear. The parties agreed that Kastner and Kennedy would pay Adams $890,000.00, plus interest, in settlement of the $1.3 million

judgment. Kastner and Kennedy would acquire the necessary money to pay Adams by obtaining a loan on the Beverly Hills property. In the event that Kastner and Kennedy could not obtain the loan, the settlement agreement provided that:

Kennedy and Kastner shall be in default of this Agreement and Kennedy and Kastner consent to the prompt judicial sale of the Beverly Hills Property under the supervision of the Court in the California Litigation. The proceeds from such judicial sale shall be used to pay Adams Eight Hundred Fifty [sic] Thousand Dollars ($890,000.00) plus accrued interest at the rate of ten percent (10%) from the date this Agreement is signed until paid. *If the proceeds from the judicial sale* [of the Beverly Hills property] are insufficient to pay to Adams the entire $890,000.00 plus interest, then Adams shall be entitled to collect solely from Kastner the Balance Due of the Underlying Judgment, less credit for all payments received.

The parties were very particular in the wording of this agreement. This is because in the underlying suit Adams was trying to unwind the conveyance of the Beverly Hills property to Kennedy and to establish that the four other properties in Kennedy's name were subject to the Virginia judgment. The agreement was a compromise. It specifically provided that:

It is agreed that Kennedy has no personal liability to Adams under this Agreement or otherwise.... Kennedy shall not be personally liable for any deficiency remaining in the event that ... [the] sale of the Beverly Hills Property does not generate sufficient proceeds to pay all amounts due pursuant to the terms of the Agreement. Except for the maximum amount due ... from the Beverly Hills Property, Kennedy shall not be personally liable for any amounts due on the Balance Due of the Underlying Judgment against Kastner. While the agreement ended litigation against Kennedy and her four remaining properties, it also protected Adams' right to proceed solely against Kastner for the balance due under the $1.3 million judgment if the proceeds from the sale of Kennedy's Beverly Hills property did not provide for the full $890,000, plus interest.

With accrued interest, the final settlement amount was $934,865.85 when the Beverly Hills property was finally sold. The proceeds from the sale of the home, however, amounted to $929,477.00. Because the proceeds from the sale of the Beverly Hills property were insufficient to pay Adams the entire settlement amount, under the contract, he was entitled to collect solely from Kastner the balance due of the $1.3 million judgment.

Where, as here, the language of a written contract is clear and explicit, that language will govern the interpretation of the agreement and the determination of the intent of its parties. *Indus. Indem. v. Superior Court,* 224 Cal.App.3d 828, 831, 275 Cal.Rptr. 218 (1990). Under California law, "[i]f ... a contract is clear and explicit, involves no absurdity, and contains no ambiguity or uncertainty, it will be interpreted and the intention of the parties ascertained solely from the language employed." *Ede v. Ede,* 208 Cal. App.2d 718, 720, 25 Cal.Rptr. 576 (1962). Moreover, "courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein." *Id.* at 721, 25 Cal.Rptr. 576 (quoting *S. California Gas Co. v. Ventura Pipe Line Constr. Co.,* 150 Cal.App.2d 253, 257, 309 P.2d 849 (1957)). Here the terms of the contract were clear and unambiguous and should have been followed. Because the proceeds from the sale of the property were insufficient to pay Adams

the entire settlement amount, the entire balance of the underlying judgment was resurrected. This is what the parties agreed to after consulting counsel and these are the terms of the contract this court should uphold.

The case the majority cites, *Harris v. Klure*, 205 Cal.App.2d 574, 23 Cal.Rptr. 313 (1962), is inapplicable in this situation where the terms of the agreement are clear because *Klure* dealt with interpreting ambiguous terms. *Id.* at 577, 23 Cal.Rptr. 313 ("The issues on this appeal primarily involve the interpretation of uncertain and ambiguous provisions of a written partnership agreement.").

Because the agreement the parties entered into clearly establishes Adams' right to the balance of the judgment, I would reverse the district court's order granting Kastner's motion to enforce the settlement agreement and grant Adams' motion for dismissal without prejudice to his right to collect the remaining judgment balance from Kastner.