[Civ. No. 6419.   Third Dist.—June 11, 1941.]

C. W. CALETTI, Appellant, v. STATE OF CALIFORNIA, Respondent.

Horace W. B. Smith and Theodore Tamba for Appellant.

C. C. Carleton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed for Respondent.

PULLEN, P. J.—This is an appeal from a judgment in favor of defendant in an action brought on a construction contract for certain road work on a state highway in Mendocino County. During the work a slide occurred, and the dispute here is as to the method of measuring its cubic contents.

The contract provided that roadway excavation would include the removal of slides outside the limits of the cross section which came into the roadway through no fault of the contractor. The contract also provided that "quantities of excavation will be computed by the method of average end areas." The issue here is what is meant by "average end areas."

Appellant contends that in computing the quantities of excavation by this method, or in this case at least, the center line of the highway must be used as the third dimension. The slide here occurred upon a curve and respondent claims that the use of the center line as a base under such conditions results in an error, pointing out that if the center line is

on a curve and the excavation is measured on the inside of the curve, the error results in a determination of a larger quantity than was actually excavated; if the material to be measured is on the outside of the curve, the error results in a finding of a smaller quantity than was actually excavated.

Upon this question the trial court received testimony from various engineers—qualified experts—as to the meaning of the term "average end areas," and found that "the defendant employed what is known as 'the correction for curvature;' that the so-called correction for curvature was and is a part of the method of measuring quantities by the 'method of average end areas' within the usual, common and ordinary meaning of said term, where the center line is on a curve; that the curvature at the place herein involved was 'on a curve.'"

Section 1644 of the Civil Code provides that words in a contract are to be understood in their ordinary and popular sense, unless used by the parties in a technical sense, in which case the latter is accepted, and section 1645 following, states that technical words are to be interpreted as usually understood by persons in the professions to which they apply.

The trial court properly received evidence of experts, which evidence fully supported the foregoing finding of fact. Here it is claimed by appellant that the contract was susceptible of two interpretations and the method contended for by appellant had been applied by the parties in previous computation of materials handled on this particular job, and the interpretation of the language had been established by usage between these parties.

Mr. Edward Von Geldern, a witness called by appellant testified that the term "average end area" method of measurement may or may not include curvature correction, but stated that it is not the usual custom to include curvature correction, for ordinarily it makes no difference in the final result. Several other experienced engineers testified, and recognized text writers established the fact, that curvature correction was a part of the method adopted in the contract.

It is admitted the state engineers did not use the correction for curvature in computing the amount to be paid appellant for the normal material removed within the roadway prism. The reason seems to have been, as admitted by Mr. Von

Geldern, that in that area either method would have yielded approximately the same result, and the failure to use the curvature correction method within the highway prism did not result in any error from the true quantity, but it does appear that if such correction were not applied in the slide area, which area was on one side of the area line, it would result in a substantial error as to the actual quantity of material to be moved.

At the time the contract was entered into it could not have been anticipated that slides would occur, or if they did, upon which side of the curve such slides might happen; for if a slide was to occur on the outside of. the curve the contractor would be the loser, if it occurred on the inside, as here, he would be the gainer if the curvature correction method was not applied.

It is well settled that if one construction of a contract would make it unreasonable, unfair or unusual, and another construction would make it fair, reasonable and just, the latter construction must be adopted. (*Stein* v. *Archibald,* 151 Cal. 220 [90 Pac. 536].) It would seem that here the correction was properly called into use, for it cannot be assumed the contractor was agreeing to take less pay for material actually handled, or that the state was assuming to pay for more yardage than actually removed by the contractor.

In *Riverside Heights Water Co.* v. *Riverside Trust Co., Ltd.,* 148 Cal. 457 [83 Pac. 1003], it was claimed that by certain payments and other acts respondent had recognized a particular construction of the terms of a contract, but the court said:

"And while in a case of an ambiguous contract the conduct of the parties may be proved to aid in its interpretation, yet it is not conclusive evidence thereof, and it may be disregarded in favor of more satisfactory evidence to the contrary. With the conclusion of the lower court on such conflicting evidence we cannot interfere."

There is no evidence of any practical construction of the contract by the parties in respect to the measurement of the quantities of material in the slide area, but even if there was such evidence, the practical conduct of the parties is evidence only of intention and is not conclusive. Neither can it be said that here, where the problem of removing slide

material on a curve had arisen, that the parties had exclusively adopted the center line method, because it does not appear that such a situation had theretofore arisen on this job, or that in the special contract entered into for the removal of this slide such method was specified as the sole measure of calculation.

The finding of the court as to the meaning of the term used in the contract is amply supported by the evidence, and the contract being susceptible of two interpretations, the interpretation of the trial court should not be disturbed in view of all the circumstances.

The judgment is affirmed.

Thompson, J., and Tuttle, J., concurred.