OOUGHLIN, J.
 

 The issues on this appeal primarily involve the interpretation of uncertain and ambiguous provisions of a written partnership agreement providing for the purchase by a surviving partner of the interest of a deceased partner in a partnership business, and the obligation of the former to account to the estate of the latter for any profits made while continuing the business after death and before purchase. No extrinsic evidence was introduced in the trial court as an aid to interpretation. Under these circumstances the meaning of the disputed provisions must be ascertained by this court as a matter of law in accord with applicable principles of construction. (Prickett v.
 
 Boyal Ins. Co., Ltd.,
 
 56 Cal.2d 234, 237 [14 CaI.Rptr. 675, 363 P.2d 907];
 
 Meyer
 
 v.
 
 State Board of Equalization,
 
 42 Cal.2d 376, 381 [267 P.2d 257];
 
 Estate of Platt,
 
 21 Cal.2d 343, 352 [131 P.2d 825].) This determination is made in adherence to the rule that the interpretation of an uncertain and ambiguous contract by a trial court, without the aid of extrinsic evidence, is not binding upon and will not be accepted by an appellate court unless the latter determines that it is reasonable, but if the interpretation by the trial court is reasonable, it will be accepted on appeal even though the contract in question is subject to other equally reasonable interpretations. (Prickett v.
 
 Boyal Ins. Co., Ltd., supra,
 
 56 Cal.2d 234, 237;
 
 Medico-Dental etc. Co.
 
 v.
 
 Horton & Converse,
 
 21 Cal.2d 411, 430 [132 P.2d 457];
 
 Estate of Platt, supra,
 
 21 Cal.2d 343, 352;
 
 Lundin
 
 v.
 
 Hallmark Productions, Inc.,
 
 161 Cal.App.2d 698, 701 [327 P.2d 166].)
 

 In construing a contract the court should strive to ascertain its object as reflected in the provisions thereof; should be guided by the intention of the parties as disclosed by those provisions (Civ. Code, §§ 1636,1638;
 
 Eatwell
 
 v.
 
 Beck,
 
 41 Cal.2d 128,133 [257 P.2d 643];
 
 King
 
 v.
 
 Stanley,
 
 32 Cal.2d 584, 591 [197 P.2d 321];
 
 H. 8. Crocker Co., Inc.
 
 v.
 
 McFaddin,
 
 148 Cal.App.2d 639, 643 [307 P.2d 429];
 
 Hay
 
 v.
 
 Allen,
 
 112 Cal.App.2d 676, 681 [247 P.2d 94];
 
 California Building Co.
 
 v.
 
 Halle,
 
 80 Cal.App.2d 229, 235 [181 P.2d 404]); should endeavor to effect the intention and object thus ascertained (Disney v.
 
 Disney,
 
 121 Cal.App.2d 602, 615 [263 P.2d 865]);
 
 *578
 
 should adopt that construction which will make the contract reasonable, fair and just
 
 (Cohn
 
 v.
 
 Cohn,
 
 20 Cal.2d 65, 69 [123 P.2d 833];
 
 Caletti
 
 v.
 
 State,
 
 45 Cal.App.2d 302, 305 [114 P.2d 9]); should give it such interpretation “as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties” (Civ. Code, § 1643) ; should avoid an interpretation which will make the contract unusual, extraordinary, harsh, unjust or inequitable
 
 (Straus
 
 v.
 
 North Hollywood Hosp., Inc.,
 
 150 Cal.App.2d 306, 311 [309 P.2d 541];
 
 Disney
 
 v.
 
 Disney, supra,
 
 121 Cal.App.2d 602, 615;
 
 Smetherham
 
 v.
 
 Laundry Workers’ Union,
 
 44 Cal.App.2d 131, 138 [111 P.2d 948]), or which would result in an absurdity (Civ. Code, § 1638;
 
 Pacific Tel. & Tel. Co.
 
 v.
 
 City of Lodi,
 
 58 Cal.App.2d 888, 892 [137 P.2d 847]); should reject language which is wholly inconsistent with its object (Civ. Code, § 1653;
 
 Jackson
 
 v.
 
 Puget Sound Lumber Co.,
 
 123 Cal. 97, 100 [55 P. 788]); should consider the contract as a whole, using each clause thereof as a help to interpret the others (Civ. Code, § 1641); should give effect to every part thereof if reasonably practicable (Civ. Code, § 1641;
 
 Heidlebaugh
 
 v.
 
 Miller,
 
 126 Cal.App.2d 35, 38 [271 P.2d 557]) and, if this is impossible, to favor an “interpretation which gives effect to the main apparent purpose of the contract”
 
 (Heidlebaugh
 
 v.
 
 Miller, supra,
 
 126 Cal.App.2d 35, 38).
 

 The plaintiff, Edward Harris, respondent herein, and Harry P. Klure, now deceased, owned and operated a business under a written partnership agreement dated June 22, 1949. This agreement contained provisions by which a surviving partner could acquire the interest of a deceased partner in the partnership business. After Klure’s death, the plaintiff, as surviving partner, chose to acquire the decedent’s interest in the business. A dispute arose respecting the price to be paid therefor. Thereupon, the plaintiff brought this action against the legal representative of Klure’s estate, the defendant and appellant herein, to obtain a declaration of the rights and duties of the parties under the agreement, and to specifically enforce the same.
 

 After Klure’s death the plaintiff continued to operate the partnership business. The agreement provides that: “Upon the death of a partner, the books shall be closed immediately hut the remaining partner may continue to operate the business under direction of the court until a sale has been effected as herein set forth.” Thereafter the plaintiff orally indicated
 
 *579
 
 to the defendant, the administrator of Klure’s estate, that he desired to purchase Klure’s interest in the partnership business.
 

 The partnership agreement is divided into numbered sections; one of these, i.e., section 23, consisting of six paragraphs, prescribes a method by which a surviving partner may acquire the interest of a deceased partner; contains many seemingly uncertain, ambiguous and repugnant provisions bearing upon this subject; and is the source of the controversy before this court. Specific provisions in this regard are:
 

 (1) “.. . that in event of the death of one of the partners, all property hereinbefore described, together with the furniture and fixtures and equipment and supplies may be purchased by the surviving partner upon his paying unto the heirs, executors or administrators of the deceased partner the sum of money which is equal to the appraised value of the share which belonged to the deceased partner at the time of his death ...”;
 

 (2) “The continuing partner shall have until thirty days after final appraisal of the partnership property to exercise his option to purchase”; and
 

 (3) “Should the surviving partner make actual purchase of the share of the deceased partner in and to the assets of the firm, and should the appraisement of the State Inheritance Tax Appraiser for the estate of the decedent be not acceptable to either of the contracting parties, then such value shall be determined by arbitration, the surviving partner to name one arbitrator, the legal representative of the decedent’s estate to name another arbitrator, and the third to be selected by them. The decision of a majority of such arbitrators shall be final, if such appraisement is likewise approved by the Court having jurisdiction over the estate of the deceased partner.”
 

 By these provisions the surviving partner is given the option to purchase the interest of the deceased partner at its appraised value which may be either the appraised value fixed by the appraisement of the inheritance tax appraiser for the estate of the deceased partner, if that value is acceptable to both parties, otherwise it shall be the appraised value fixed by arbitration. In the latter event the probate court must approve the appraisement. The surviving partner is given the option to purchase at the appraised value, but both the surviving partner and the legal representative of the estate of the deceased partner are given the option to require the appraised value to be fixed by arbitration.
 

 
 *580
 
 Preliminarily the plaintiff and the defendant attempted to agree upon the value of the deceased partner’s interest, but failed in this attempt. Thereafter, the inheritance tax appraiser made an appraisement and, on January 13, 1959, the defendant administrator caused it to be filed in the decedent’s estate. Following this, i.e., on February 2, 1959, the plaintiff notified the defendant of his intention to purchase the decedent’s partnership interest for the value placed thereon in the inheritance tax appraisement, i.e., $62,136. Thereupon, i.e., on February 18, 1959, the defendant advised the plaintiff that the appraisement in question was not acceptable to him and requested that the appraised value be fixed by arbitration. The plaintiff contended that the defendant theretofore had accepted the appraisement of the inheritance tax appraiser and, therefore, his attempted nonaceeptance and request for arbitration was of no effect. This issue was presented in the present action and the trial court found in accord with the plaintiff’s contention. On appeal the defendant claims that the conclusion of the trial court is not sup- ' ported by the evidence which shows that all of the acts relied upon to establish acceptance took place before the inheritance tax appraisement was filed. The proof in this regard reflected the actions of the defendant at the time the inheritance tax appraiser was making his appraisal; showed purported agreement by the defendant with the appraisal placed on some articles and no disagreement with respect to the appraisal placed on others; consisted generally of evidence which the plaintiff claims establishes approval by the defendant of the amount which the inheritance tax appraiser proposed to include in the appraisement to be filed in the estate. The fact remains, however, that all of the evidence in question relates to a time before the appraisement of the inheritance tax appraiser actually was made and filed.
 

 The provisions of the partnership agreement which prescribed the price for which the deceased partner’s interest might be purchased by the surviving partner are concerned with the appraisement actually made and filed by the inheritance tax appraiser. Until filed, the appraisement is in an embryonic state; is subject to change by the appraiser; and his indicated conclusions in the premises, whether they be acceptable or not acceptable to interested parties, constitute only a proposed or contemplated appraisal. At some time in the course of the proceeding, the surviving partner must indicate his acceptance or nonacceptance of the appraisement
 
 *581
 
 as the method for determining the price he is to pay. In the instant case he did this after the appraisement was filed. Although there is evidence from which the trial court was entitled to find that he gave notice of his intention to exercise the option to purchase before the appraisement was filed, this evidence does not indicate that he offered to accept the appraisement of the inheritance tax appraiser as the price he was to pay. Until the surviving partner indicates his intention to accept the inheritance tax appraisement method for determining the appraised value of the property he is to purchase, the legal representative of the decedent’s estate is not called upon to indicate his nonacceptance of that method. There is a distinction between the legal representative accepting the inheritance tax appraisement as such and accepting it as the price for which the decedent partner’s interest shall be sold. There is nothing in the evidence which supports a finding that the defendant accepted the inheritance tax appraiser’s proposed appraisal as the price to be paid by the plaintiff under his option. Merely agreeing that the proposed appraisal is correct for appraisal purposes, if it be assumed that this occurred, does not establish an acceptance thereof for sale purposes. The law required the defendant to file an appraisement in the subject estate (Prob. Code, § 600), and his doing so may not be considered an expression of his intention to accept that portion thereof appraising the decedent’s partnership interest as the purchase price to be paid under the plaintiff’s option to buy. We hold that the “appraisement” referred to in the partnership agreement is the appraisement filed by the inheritance tax appraiser in the estate of the deceased partner; that an interpretation of that agreement which would authorize the legal representative of that estate to accept the inheritance tax appraiser’s appraisal of the decedent’s partnership interest as the purchase price thereof prior to the filing of such appraisement, is unreasonable ; and that under the circumstances, the evidence does not support the finding of the trial court that the defendant accepted such appraisal as the purchase price in question.
 

 The trial court also ruled that the plaintiff was not required to account for any of the profits made in the business during the time he operated the same after the death of his deceased partner; that, under its interpretation of allegedly applicable provisions of the partnership agreement, the plaintiff should pay the decedent’s estate interest from date of death at the rate of 5 per cent per annum on the value of the decedent’s
 
 *582
 
 share, i.e., the purchase price under his option to buy, in lieu of any profits therefrom; and that, because of the delay resulting from the defendant’s refusal to accept the appraisement figure as the purchase price, no interest should be charged for the time consumed by the instant litigation. The defendant contends that this was error; that the provisions relied upon by the court as the basis for its decision are inapplicable; that section 15042
 
 [1]
 
 of the Corporations Code is controlling; and that the plaintiff is required thereby to account to the decedent’s estate for any profit made during the period in question. Disregarding the subject agreement and applying the quoted section, the defendant, as legal representative of a deceased partner, would be entitled to interest on the value of the latter’s partnership share or, in lieu thereof, the profits attributable to the use of that share. However, application of this code section expressly is conditioned upon the fact that the parties have not agreed otherwise. The plaintiff contends that, under the partnership agreement, the surviving partner who exercises his option to buy the share of the deceased partner is required to pay interest on the purchase price at the rate of 5 per cent per annum, and is not required to account for any profits made since death.
 

 Reasonably construed, the various provisions of section 23, some of which by one standard are in conflict with others but by another standard are merely surplusage, all contemplate acquisition of the deceased partner’s share by the surviving partner. At first blush, the paragraph in which the 5 per cent interest provision first occurs seems to refer to a method of acquisition by the surviving partner other than by purchase; directs that an accounting and statement of all of the assets of the partnership shall be made; by previous reference re
 
 *583
 
 quires a statement of the valuation of the partnership real and personal property “as it may be determined or agreed”; and provides that the amounts ascertained to be owing to the deceased partner shall be paid by the surviving partner within 12 months together with interest at 5 per cent per annum from date of death. However, the only method of determining the valuation of such property is that prescribed in connection with determining the purchase price thereof, i.e., the appraised value as fixed by the appraisement of the inheritance tax appraiser for the estate of the deceased or by arbitration. In this regard it is noteworthy that for the purpose of a similar account and statement during the life of the parties, the agreement by a separate section, i.e., section 24, provides for arbitration to ascertain such valuation in the event of dissolution 1 ‘ otherwise than by death. ’ ’ Inferentially, the requirement for an accounting and statement contained in section 23, i.e., that containing the option to buy, which directs that the valuation of the real and personal property to be included therein, shall be such “as may be determined or agreed,” limits the determination feature to the method therein described, i.e., by appraisal through inheritance tax appraisement or by arbitration. Therefore, it is reasonable to conclude that the 5 per cent interest and time payment provisions refer to acquisition of the decedent’s share by purchase. At the most, the paragraph in question adds to the foregoing concept the probability of an agreement respecting valuation, i.e., “the valuation as it may be . . . agreed,” in lieu of a determination on the basis of appraised value in accord with the formula heretofore noted. However, the existence of this probability does not conflict with the conclusion that the 5 per cent interest and time payment provisions refer to the acquisition of the deceased partner’s share through the prescribed option to buy process.
 

 In an immediately subsequent paragraph, provision is made for payment of “the aforesaid share” in monthly or yearly installments, with interest from date of death at 5 per cent per annum on the unpaid balance. The only prior mention of any “share” occurs in that part of section 23 which confers the option to purchase. This fact also supports the conclusion that all of the provisions in section 23 deal with the surviving partner’s acquisition of the deceased partner’s share.
 

 Granted an agreement that upon the death of one partner the surviving partner may continue the partnership
 
 *584
 
 business, may purchase the partnership share of the deceased partner, and shall pay 5 per cent interest on the purchase price from date of death, it would be unreasonable to conclude that the parties did not thereby intend to dispense with the election provided by section 15042 of the Corporations Code. A surviving partner who continues the partnership business is not chargeable with both interest and profits for his use of the deceased partner’s share in such undertaking. (Corp. Code, § 15042;
 
 Robinson
 
 v.
 
 Simmons,
 
 156 Mass. 123 [30 N.B. 362];
 
 Schneider
 
 v.
 
 Schneider,
 
 347 Mo. 102 [146 S.W.2d 584, 591].) To interpret the subject agreement so as to require the surviving partner to pay both interest on the partnership share purchased by him and also that portion of the profits attributable to such share after death, would render it oppressive and inequitable. We conclude that where a partnership agreement provides that a surviving partner may continue the partnership business after death, may purchase the deceased partner’s share therein, and upon purchase shall pay interest on the value thereof from date of death, an election is made in the partnership agreement to accept interest in lieu of a share of any profits from the surviving partner’s continued operation of the business in the event he makes such purchase. (See
 
 Succession of Conway,
 
 215 La. 819 [41 So.2d 729, 733].)
 

 The decision in
 
 Keyes
 
 v.
 
 Hurlbert,
 
 43 Cal.App.2d 497, 505 [111 P.2d 447], upon which the defendant relies, is not in conflict with the aforesaid conclusion because in the cited ease the option provision in the partnership agreement did not provide for the payment of interest by the surviving partner from date of death to date of acquisition of the decedent’s share.
 

 However, there is no basis for the trial court’s determination that the surviving partner should not pay interest during the time the instant litigation is pending; the partnership agreement makes no provision for nonpayment of interest in the event of such a contingency; and he has possession of both the business and the purchase money during that time.
 

 The judgment is reversed with instructions to enter judgment in harmony with the views expressed in this opinion.
 

 Griffin, P. J., and Shepard, J., concurred.
 

 [1]
 

 Section 15042 of the Corporations Code provides: 1 ‘ When any partner retires or dies, and the business is continued under any of the conditions set forth in Section 15041 (1, 2, 3, 5, 6), or Section 15038 (2b) without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at Ms option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided, that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by Section 15041(8) of this act.”