[No. B232348. Second Dist., Div. Six. Feb. 28, 2012.]

LEE JAMIESON, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF CARPINTERIA et al., Defendants and
Respondents.

## Counsel

Price, Postel & Parma, Timothy E. Metzinger and Susan M. Basham for Plaintiff and Appellant.

Brownstein Hyatt Farber Schreck, Peter N. Brown, City Attorney, Beth Collins-Burgard, Deputy City Attorney, and Timothy H. Irons for Defendants and Respondents.

## Opinion

**PERREN, J.**—Lee Jamieson appeals a judgment denying his petition for administrative mandamus challenging the City of Carpinteria's denial of his request for a development permit to enlarge a patio on beachfront property. We affirm.

### STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Appellant Lee Jamieson is the owner of a beachfront condominium on Sandyland Road in respondent City of Carpinteria (the City). In 1967, several owners of beachfront property in the City, including Jamieson's predecessor in interest, initiated a quiet title action, challenging the public use of the beach pursuant to an easement held by the City. (*Roberts v. City of Carpinteria* (Super. Ct. Santa Barbara County, 1974, No. SBO79327.)) After several years of litigation, the City and the property owners, as well as the State of California, agreed to settle the issues in dispute by a stipulated judgment approved by the trial court on February 27, 1974. The judgment established a "judgment line" that divided the beachfront area into two sections—the "public beach" seaward of the judgment line, and the "private

---

[1] The trial court's excellent statement of decision is the source of a substantial portion of this opinion.

beach" landward of the judgment line. As to the public beach, the judgment affirmed the City's easement in, on, and across the beach area "for the purpose of public recreation by the general public," while permanently enjoining the property owners and their successors from "[d]oing or permitting . . . anything whatsoever that shall interfere with the full use and enjoyment of the [City's] easement." As to the private beach, the judgment enjoined the property owners from erecting "any structures of any kind or nature over, on or across the Private Beach" except for "the installation and maintenance of flat, surfaced patios and appropriate landscaping."

In 2002, Jamieson purchased the first of two beachfront condominiums in a three-unit building on Sandyland Road. The units were developed as apartments in 1976, two years after the stipulated judgment. The developer of the property, Jamieson's predecessor in title, applied to the California Coastal Commission (Commission) for a coastal development permit.[2] The Commission granted the permit, subject to certain conditions. One of the conditions required that the private beach "be left untouched so that existing vegetation may be allowed to stabilize the dunes." The following year, the Commission approved the conversion of the apartment units into condominiums.

In 2003, the City adopted a coastal land use plan under which it began imposing a "string-line" standard to limit beachfront development. The string-line standard requires a property owner to run an imaginary line between the farthest extension of existing structures on the two properties on either side of the proposed development in order to establish the farthest extent of permissible construction. The string-line standard provides, in relevant part: "New development or redevelopment shall be located as far landward as feasible. No development, including but not limited to, new construction, additions, remodels, or accessory structures, shall encroach seaward beyond a plane created by extending a straight line between the nearest adjacent corners of the existing buildings on either side of the proposed development. Patios, balconies, porches and similar appurtenances, shall not encroach beyond a plane created by extending a straight line between the nearest adjacent corners of the existing balconies, porches or similar appurtenances, on either side of the proposed development. If no balcony, porch or similar appurtenance exists on the nearest structure, the plane shall be established from the nearest adjacent building corner."

In January 2003, Jamieson sought a development permit from the City to allow him to replace an existing 150-square-foot concrete patio with a new

---

[2] At the time, the City's coastal development program had not been certified and, therefore, the Commission exercised exclusive jurisdiction over development along the beach. (Pub. Resources Code, § 30000 et seq.)

295-square-foot patio on the private beach side of the 1974 judgment line. The planning commission approved the development permit, but limited the seaward extent of the patio to 257 square feet based on the string-line between an existing concrete deck on the adjacent property to the west and an existing concrete deck two properties to the east.

In 2005, Jamieson purchased a second condominium unit in the same building. The City subsequently approved a permit request from Jamieson to combine his two condominium units into one. The permit allowed Jamieson to construct interior improvements and to modify the patio by filling in an additional 260 square feet of beach between Jamieson's residence and the string-line. Combined with the existing 257-square-foot patio, the addition gave Jamieson a patio with a total area of approximately 517 square feet.

In February 2008, Jamieson submitted an application to the City for a building permit to add an additional 548 square feet to his patio landward of the judgment line, for a total patio area of approximately 1,065 square feet. City staff advised Jamieson that a coastal development permit would be required and that the expansion was potentially inconsistent with the string-line established by the planning commission in 2003. Based on this response, Jamieson filed suit against the City for injunctive and declaratory relief. The City demurred to the complaint and on July 22, 2008, the trial court sustained the demurrer without leave to amend on the ground that Jamieson had failed to exhaust his administrative remedies before both the City and the Commission.

Following the trial court's decision, Jamieson filed a claim for a vested rights exemption with the Commission, claiming that he had the right to extend the patio pursuant to the stipulated judgment. (Pub. Resources Code, § 30608.)[3] The Commission denied Jamieson's claim. Jamieson did not appeal the Commission's decision. Jamieson then filed an application for a coastal development permit with the City. The City denied the permit application, finding that the proposed patio expansion was not in conformity with the City's coastal land use plan, including the string-line policy.

On January 13, 2010, Jamieson filed the present action challenging the City's decision. The petition/complaint asked the court (1) to declare the rights and responsibilities of the City and Jamieson as parties to the 1974

---

[3] Public Resources Code section 30608 states: "No person who has obtained a vested right in a development prior to the effective date of this division or who has obtained a permit from the California Coastal Zone Conservation Commission pursuant to the California Coastal Zone Conservation Act of 1972 . . . shall be required to secure approval for the development pursuant to this division. However, no substantial change may be made in the development without prior approval having been obtained under this division." (Citation omitted.)

judgment and (2) to issue a writ of mandate reversing the city council's decision to deny the project and instructing the City to issue a coastal development permit for construction of a 548-square-foot patio expansion on Jamieson's property. The trial court denied the petition/complaint on the grounds that no vested right was involved and substantial evidence supported the City's denial of the permit.

On appeal, Jamieson concedes that his failure to appeal the Commission's denial of his vested rights claim precludes him from claiming a vested right under the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, former § 27000 et seq.). He nonetheless argues that his failure to appeal the Commission's decision does not deprive the court in this action from determining whether the stipulated judgment confers a vested right. In the alternative, Jamieson asserts that, even if no vested right was conferred by the stipulated judgment, the trial court erred in determining that the City's denial of his application for a coastal development permit was supported by substantial evidence.

## DISCUSSION

### *Failure to Appeal the Commission's Decision Precludes a Claim That the Stipulated Judgment Conferred a Vested Right*

█ In the proceedings before the Commission, Jamieson based his vested right claim on the stipulated judgment. He did not seek judicial review of the Commission's denial of the claim. Under the doctrine of exhaustion of judicial remedies, "[o]nce a[n administrative] decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69–72 [99 Cal.Rptr.2d 316, 5 P.3d 874].) Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims. (*Id.* at p. 76.)" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 113 [84 Cal.Rptr.3d 734, 194 P.3d 1026].) If a complainant fails to overturn an adverse administrative decision by writ of mandate, it is binding in a later civil action brought in superior court. (*Runyon v. Board of Trustees of California State University* (2010) 48 Cal.4th 760, 773–774 [108 Cal.Rptr.3d 557, 229 P.3d 985].)

█ *LT-WR, L.L.C. v. California Coastal Com.* (2007) 152 Cal.App.4th 770 [60 Cal.Rptr.3d 417], illustrates this principle in the vested rights context. In

that case, the property owner argued that he could assert a vested rights claim in the course of an administrative proceeding to obtain a coastal development permit without first obtaining a vested rights determination from the Commission. The court said: "The argument has no merit. As stated in *Davis v. California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700 [129 Cal.Rptr. 417] . . . : 'A [property owner] who claims to be exempt from the Coastal Zone Conservation Act permit requirements by reason of a vested right to develop the property must claim exemption on that basis. (Cal. [Code Regs.], tit. 14, § 13700 et seq.) *Where the developer fails to seek such a determination but instead elects to apply only for a permit*, he cannot later assert the existence of a vested right to development, i.e., the developer waives his right to claim that a vested right exists. [Citation.]' [Citation.]" (*LT-WR*, at p. 785.)

LT-WR's failure to seek a vested rights determination in the first instance precluded it from later claiming entitlement to a coastal development permit based on the alleged existence of a vested right. Jamieson's failure to file an appeal from the Commission's denial of his vested rights claim leads to the same result—he is precluded from asserting a vested right during the coastal development permit process.

### No Vested Right Was Conferred by the Stipulated Judgment

Even if we are not precluded from reviewing the stipulated judgment because Jamieson failed to appeal the Commission's vested rights determination, we agree with the trial court that it does not confer a vested right to expand the patio free from the application of later-enacted laws that restrict such development.

■ A stipulated judgment is a contract and must be construed under the rules applicable to any other contract. (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47 [111 Cal.Rptr.3d 313].) Where, as here, there is no competent parol evidence as to the meaning of an agreement, construction of the contract is a question of law, subject to our independent review. (*Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach* (2001) 86 Cal.App.4th 534, 548–549 [103 Cal.Rptr.2d 447].)

■ In construing a contract, we must give effect to the parties' intentions. (Civ. Code, § 1636; *Harris v. Klure* (1962) 205 Cal.App.2d 574, 577 [23 Cal.Rptr. 313].) For purposes of ascertaining the parties' intent, the court must first look to the language of the contract itself. (Civ. Code, § 1637; *Pendleton v. Ferguson* (1940) 15 Cal.2d 319, 323 [101 P.2d 81].) If the language is clear and explicit, and does not involve an absurdity, it controls interpretation. (Civ. Code, § 1638; *WDT-Winchester v. Nilsson* (1994) 27

Cal.App.4th 516, 528 [32 Cal.Rptr.2d 511].) Strained interpretations or constructions must be avoided. (*American Internat. Underwriters Ins. Co. v. American Guarantee & Liability Ins. Co.* (2010) 181 Cal.App.4th 616, 629 [105 Cal.Rptr.3d 64].) Terms and conditions not found in the wording of the agreement cannot be added by the court. (*Katz v. Haskell* (1961) 196 Cal.App.2d 144, 158 [16 Cal.Rptr. 453].)

Paragraph 11 of the stipulated judgment provides, in relevant part: "Plaintiffs, their successors, heirs and assigns are permanently enjoined and restrained from: [¶] (a) Doing or permitting to be done anything whatsoever that shall interfere with the full use and enjoyment of the [City's] easement described in Paragraphs 7 and 8 hereinabove; [¶] (b) Erecting or installing or permitting the erection or installation of pipelines or power lines in, over or under the Public Beach; [¶] (c) Except as stated in Paragraph 12, changing the natural grade of any portion of the Private Beach; [¶] (d) Erecting any structures of any kind or nature over, on or across the Private Beach, except for (i) the installation and maintenance of flat, surfaced patios and appropriate landscaping, and (ii) erection of fences . . . ."

By its terms, paragraph 11 is a set of limitations on the owner's property rights. It permanently enjoins and restrains development of both the public and private beach areas. The paragraph enumerates all the activities that are prohibited by the judgment. The fact that the parties agreed not to enjoin the installation of patios and fences is not the same as granting an affirmative right to install such structures. It simply means that the excepted structures have the potential for being permitted, subject to applicable laws. Had the parties intended the judgment to grant the owners an unrestricted right to install patios and fencing over the entire private beach area, they would have said so. For the court to adopt Jamieson's interpretation of paragraph 11, it would have to insert nonexistent terms into the judgment, in contravention of accepted construction principles. We decline to do so.

Jamieson contends that the final sentence of paragraph 11 protects the owners' development rights and overrides any later-adopted land use laws that seek to limit those rights. The final sentence reads: "The prohibitions of this Paragraph 11 shall override any zoning ordinance that may at any time permit uses of the Private Beach, or any part thereof, other than or in addition to the uses set forth in this Paragraph 11." Like the court below, we disagree with Jamieson's interpretation. The above provision is a further restriction on the rights of the property owners, not the City. As the City correctly argues, the purpose of the provisions was to make sure that the property owners could not take advantage of more-permissive land use ordinances that may be adopted in the future. The City's construction is entirely consistent with the expressed intent of paragraph 11, which is to enjoin and restrain property

owners. Plainly construed, the provision was intended to override any later-enacted laws to the extent they may "permit" development that is "other than or in addition to" the patios, landscaping and fences potentially allowed under the judgment.

### Substantial Evidence Supports Denial of the Development Permit

Because no vested right is involved, the court reviews the City's decision to deny Jamieson a development permit applying the substantial evidence test. (*LT-WR, L.L.C. v. California Coastal Com., supra*, 152 Cal.App.4th at p. 780.) In such a review, the court presumes that the findings and actions of the agency are supported by substantial evidence. (*Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 335–336 [25 Cal.Rptr.2d 842].) The court may not reweigh the evidence. Moreover, the court must consider the facts in the light most favorable to the agency, giving it every reasonable inference and resolving all conflicts in its favor. (*Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 758 [220 Cal.Rptr. 139].) Thus, unless the findings " 'are so lacking in evidentiary support as to render them unreasonable,' " the courts must uphold the findings. (*Jaramillo v. State Bd. for Geologists and Geophysicists* (2006) 136 Cal.App.4th 880, 889 [39 Cal.Rptr.3d 170].)

Generally, "courts accord great deference to a local governmental agency's determination of consistency with its own general plan, recognizing that 'the body which adopted the general plan policies in its legislative capacity has unique competence to interpret those policies when applying them in its adjudicatory capacity. [Citations.] Because policies in a general plan reflect a range of competing interests, the governmental agency must be allowed to weigh and balance the plan's policies when applying them, and it has broad discretion to construe its policies in light of the plan's purposes. [Citations.]' " (*San Franciscans Upholding the Downtown Plan v. City and County of San Francisco* (2002) 102 Cal.App.4th 656, 677–678 [125 Cal.Rptr.2d 745], quoting *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 142 [104 Cal.Rptr.2d 326].)

After an extensive administrative review process, the City found that the proposed patio extension did not conform to the City's coastal land use plan, including Implementation Policies 18 and 19 of the Open Space, Recreation & Conservation Element which prohibit development on the dry sandy beach and contain the string-line policy. At the city council hearing, Jamieson argued that the string-line policy has been applied inconsistently, resulting in

different sizes of homes and patios, some of which extend beyond the string-line. The City's development director acknowledged two instances in which improvements encroached beyond the string-line. However, the director distinguished these developments by noting that they predated the adoption of the string-line policy in 2003. The director also stated that every development on the sandy beach that has been permitted since the 2003 adoption of the string-line policy has complied with the policy. The City was simply requiring the same of Jamieson.

The City also found that the patio extension would conflict with two other policies of the local coastal plan. Seawalls and Shoreline Structures Policy 3-3 and Carpinteria City Beach Policy 7-2, prohibit new development on the dry sandy beach. The ban on sandy beach development is designed to protect the remaining dune habitat at the beach. The patio extension would require removing nearly 31 cubic yards of sand, which would be deposited on the beach adjacent to the patio. The City found that removing this quantity of sand would negatively impact the dunes, stating: "The area of proposed development was historically part of a dune habitat that has been almost entirely lost due to encroachment from development and significant public use. Vegetation that once stabilized the dunes has been removed and has not been able to reestablish. Removing sand and constructing additional areas of hardscape, such as patios, further affects the ability of any type of dune vegetation to establish in the future and affects the movement of sand in the area proposed for development."

The patio extension would also be inconsistent with development plan criteria contained in the Carpinteria Municipal Code, Development Plan Criteria No. 1 (Consistency) and Criteria No. 6 (Health, Safety and Welfare). The proposed patio's inconsistencies with the local coastal policies have already been discussed. Criteria No. 6 requires that the proposed development "not be detrimental to the peace, health, safety, comfort, convenience, property values, or general welfare of the neighborhood." The City found that allowing the development beyond the string-line "could be detrimental to the general welfare of the surrounding neighborhood" as the patio expansion would establish new string-lines for the neighboring properties, thereby "potentially caus[ing] a domino-effect of seaward development in direct contradiction to the goals of [the] City's Coastal Plan policies." The court cannot say the finding was unreasonable.

■ Substantial evidence supports the City's conclusion that the proposed development would be inconsistent with the City's policies and regulations.

(See *Families Unafraid to Uphold Rural etc. County v. Board of Supervisors* (1998) 62 Cal.App.4th 1332, 1341 [74 Cal.Rptr.2d 1] [inconsistency with even a single land use element is enough to deny a project].)

The judgment is affirmed. Respondents shall recover costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.