Filed 8/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT BENSON, | |
|    Plaintiff and Appellant, | G050484 |
|      v. | (Super. Ct. No. 30-2013-00621744) |
| SOUTHERN CALIFORNIA AUTO SALES, INC., et al., | O P I N I O N |
|    Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Linda S. Marks, Judge. Affirmed.

Rosner, Barry & Babbitt, Christopher P. Barry and Lacee B. Smith for Plaintiff and Appellant.

Madison Harbor, and Jenos Firouznam-Heidari for Defendants and Respondents.

## INTRODUCTION

Robert Benson appeals from an order denying his motion for attorney fees and costs from respondent Southern California Auto Sales, Inc. (SCAS), after judgment was entered in his favor on a complaint based on the Consumer Legal Remedies Act (CLRA). Under the CLRA, a plaintiff cannot maintain a suit for damages if the defendant made an appropriate and timely correction offer. The court found that SCAS had offered Benson an appropriate correction upon receiving the statutorily required notice of problems with its used car. Benson contends the trial court erred in deciding SCAS had offered him an appropriate correction under the CLRA, and further that he was entitled to attorney fees as the prevailing party.

We affirm the trial court's order. Determining whether a correction offer was appropriate is a matter California law wisely leaves to the trial court's discretion. We do not find the trial court abused its discretion in this case. Whether a plaintiff can recover attorney fees and costs incurred in an action for damages after being offered an appropriate correction is a matter of statutory interpretation, and we conclude CLRA fees and costs are not available under these circumstances.

## FACTS

Benson purchased a used Infiniti from SCAS on October 1, 2011. He alleged that he subsequently learned the car had a damaged frame. He also alleged the car's price on the contract he signed was $1,496 higher than the advertised price ($24,995) and the contract falsely stated he did not make a deferred down payment, when he actually did.[1]

---

[1] Benson also alleged the advertisement for the car falsely stated it was a trade-in. The first amended complaint, however, alleged that before purchasing the car, he asked the salesman whether the car was a prior rental vehicle, and the salesman said it was.

Benson's counsel sent SCAS two letters, both dated December 10, 2012. One letter, entitled "Notice of Violation of California Law, Including but not Limited to the Consumer Legal Remedies Act," was written "to comply with California Civil Code [section] 1782(a)."[2] Benson demanded rescission of the purchase contract, return of his car payments, a $5,000 penalty, and incidental damages in an unspecified amount. He offered to return the car to SCAS. The other letter, entitled "Companion Letter to CLRA Letter Notice of Rejection, Revocation and Rescission, Offer of Settlement of Entire Matter," proposed a settlement on the following terms: SCAS pay the "damages" portion of the other letter (including investigative fees and attorney fees), pay all court costs, pay $38,500, and pay $2,850 to finalize the settlement and return the car. Benson for his part would return the vehicle and dismiss the entire case as to all parties.

The CLRA, section 1782, subdivision (b), gives a merchant 30 days to respond to a demand for correction, but Benson did not wait for that response. He filed his complaint on January 2, 2013, less than 30 days after the date of the two demand letters, alleging 17 causes of action.[3] He confined his CLRA cause of action to requests for injunctive relief.

On January 9, 2013, SCAS responded to the notice letter. While denying any wrongdoing, SCAS offered to settle the matter as follows: rescission of the contract, return of the vehicle to SCAS, refund of all car payments, satisfaction of the debt to the finance company, $2,500 for incidental and attorney fees, waiver of any claim for mileage, execution of a mutual settlement and release agreement. As SCAS noted, Benson had driven the car for well over a year before he complained, and he would be basically "walk[ing] away" from it, having had free use of it for that time.

---

[2] All further statutory references are to the Civil Code unless otherwise indicated.

[3] The complaint named other defendants, including the finance company (Capital One Auto Finance, Inc.) and two individuals.

Benson replied to SCAS's offer by demanding a total of almost $30,000 to settle the case, in addition to rescinding the contract. Included in the total amount was a demand for $8,500 to settle "all remaining causes of action" in addition to the CLRA claim. The record contains no written response to this demand.

Benson filed his first amended complaint pursuant to stipulation on November 22, 2013, listing 10 causes of action. In addition to a CLRA violation, the complaint alleged violation of the Automobile Sales Finance Act (ASFA), unfair competition and false advertising claims, Vehicle Code violations, negligent and intentional misrepresentation, and violation of the Song-Beverly Consumer Warranty Act. This complaint sought damages for CLRA violations.

Trial was set for May 12, 2014, then continued to June 16. Benson, the finance company, SCAS, and SCAS's owner, who had been sued as an individual, settled in early May. SCAS stipulated to a judgment in the amount of $34,500 against it "on the complaint." The balance of the loan was waived, and Benson agreed to turn over the car. The settlement included Benson's release of all three defendants.

The settlement/judgment allowed Benson to make a motion for attorney fees and costs – which he filed on May 21 against these three defendants – and allowed the settling defendants to contest the fee motion "on any grounds available to them." In particular, the settlement agreement allowed the defendants to contend that they were the prevailing parties "in light of the pre-litigation offer per the CLRA." Citing the CLRA and the ASFA as their basis, Benson's counsel asked for $171,915 in fees and $10,358 in costs, for a total of $182,273.

The trial court denied the motion, explaining that Benson could not maintain a cause of action for damages under the CLRA because SCAS offered him "an appropriate correction, repair, replacement or other remedy" (§ 1782, subd. (b)) (collectively "appropriate correction") back in January 2013. He was therefore not entitled to his fees or his costs. Benson protested that what SCAS had offered was not

4

appropriate because it included a settlement and release of all his claims, not just his CLRA claim. The court responded that all of Benson's claims were "inextricably intertwined with the CLRA claim and based on the same conduct." The order denying the motion was entered on June 18, 2014.

## DISCUSSION

Sections 1750 et seq. constitute the CLRA. Its remedies are non-exclusive (§ 1752), and the Legislature intended that it be "liberally construed" to promote its purposes, "which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (§ 1760.) According to the legislative history from 1970, the year of its enactment, the law was designed "to provide affirmative remedies for consumers which will protect them from unscrupulous business practices while insulating responsible businessmen from spurious or vexatious lawsuits." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 292 (1970 Reg. Sess.) Sept. 23, 1970.)

Section 1780, subdivision (a), provides: "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: [¶] (1) Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000). [¶] (2) An order enjoining the methods, acts, or practices. [¶] (3) Restitution of property. [¶] (4) Punitive damages. [¶] (5) Any other relief that the court deems proper." Subdivision (e) requires a court to award court costs and attorney fees to "a prevailing plaintiff in litigation filed pursuant to this section."

Section 1782 imposes a condition on a consumer's ability to sue for damages under the CLRA.[4] The consumer must give notice in writing of the particular CLRA violations and demand a correction, repair, replacement, or other rectification. Under section 1782, subdivision (b), no action for damages may be maintained "if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." This section was added early in the legislative process to insure that "the consumer must give the merchant an opportunity to correct his mistake." (Assem. Com. on Judiciary, Explanation of Amendments to Assem. Bill No. 292, as amended (1970 Reg. Sess.) May 18, 1970.)

The issue on appeal is twofold. First, was SCAS's January 9, 2013 offer, an appropriate correction in response to Benson's notice, and, second, if it was, does the fact that Benson could not maintain an action for CLRA damages preclude him from seeking court costs and attorney fees under the statute? We have found no published California opinions dealing with either aspect.

---

[4] Section 1782, subdivision (a), provides: "Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following: [¶] (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770. [¶] (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770. [¶] The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California."

Notice is not required for complaints seeking injunctive relief only. (§ 1782, subd. (d).) According to the legislative history, the notice requirement was not imposed on requests for purely injunctive relief so that courts could obtain jurisdiction over "fly-by-night operators," who might otherwise fold their tents and disappear during the 30-day notice period. (Assem. Bill No. 292 (1970 Reg. Sess.).)

## I.  Was SCAS's Correction Offer "Appropriate"?

"[The notice] requirement exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time." (*Morgan v. AT&T Wireless Services, Inc*. (2009) 177 Cal.App.4th 1235, 1261.) "The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 40.)

Benson argues on appeal that SCAS's response letter to his CLRA demand was not an appropriate offer of correction. The trial court found it was. Whether circumstances supporting the award of attorney fees exist is a separate issue from the amount of those fees. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 153-154.) While the *amount* of an attorney fee award is left to the trial court's discretion, we use a hybrid standard to evaluate whether the circumstances identified in the statute as criteria for an award exist. We examine the record to see whether substantial evidence supports the exercise of the court's discretion. (See *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 110; see also *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 940-941 [private attorney general statute]; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545 [partition action].) We reverse only when no substantial evidence supports the court's findings. (See *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353, 355 [no evidence of connection between lawsuit and relief; discretion abused].)

We believe the determination of appropriateness of a correction offer under the CLRA should be left to the trial court's discretion. Appropriateness involves the kind of global assessment – based on "the entirety of a case, a case [the trial court] inevitably

7

will be more familiar with than the appellate courts that may subsequently encounter the case in the context of a few briefs, a few minutes of oral argument, and a cold and often limited record" (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 713) – that calls for judicial discretion. (Cf. *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430-431 [trial court's evaluation of whether plaintiff made good faith effort to resolve discovery dispute reviewed for abuse of discretion]; *PacifiCare of California v. Bright Medical Associates, Inc.* (2011) 198 Cal.App.4th 1451, 1464 [reasonable range of settlement within court's discretion]; see *Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 927 (*Corbett*) [if court applied proper legal test for award of attorney fees, review is for abuse of discretion].) In a case such as this, where the trial court has had the parties before it on multiple occasions during an 18-month period, it is far more conversant with nuances, subtleties, and the small but telling details that go into such a decision than an appellate court could ever be. Accordingly the trial court should use its discretion, basing it on substantial evidence, to determine whether a correction was appropriate, subject, of course, to review for abuse of that discretion.

Substantial evidence supports the court's exercise of discretion in this case. The initial complaint was filed before the 30-day notice period had expired. Although the original complaint alleged several grounds for injunctive relief and the first amended complaint alleged several additional grounds, the judgment pursuant to settlement makes no mention whatsoever of any alteration in SCAS's practices. It is concerned solely with who will pay how much to whom and with the motion for attorney fees. The judgment also provided for a waiver and release of all claims between Benson and the defendants.

In addition to Benson's CLRA claim, the first amended complaint contained eight causes of action against SCAS, the only defendant against which judgment was entered. Among them were causes of action for violation of the Unfair Competition Law and the False Advertising Law, Business and Professions Code sections 17200 et seq. and 17500 et seq. Neither the UCL nor the FAL supports a claim for

8

damages, only for restitution and injunctive relief. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 371; *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 694 (*Leatherman*); Bus. & Prof. Code §§ 17203, 17535.) Neither section authorizes the recovery of attorney fees.[5] Benson alleged violations of Vehicle Code sections 11713 and 11713.1, subdivision (e).[6] The basis of the first Vehicle Code cause of action was misleading statements, namely the car's price was $24,499; the car was a trade-in; and the car had clean title. The basis of the second was the failure to sell the car at its advertised price. A violation of either statute is a misdemeanor (see Veh. Code, § 40000.11, subd. (a)), and subjects the car dealer to discipline from the Department of Motor Vehicles. (Veh. Code, § 11705, subd. (a)(10).) Our Supreme Court has declined to consider whether a consumer has a private right of action under Vehicle Code section 11713.1, subdivision (e). (*Donovan v. Rrl Corp.* (2001) 26 Cal.4th 261, 291 fn. 12.)[7] Neither Vehicle Code section affords consumers an opportunity to claim attorney fees.

The first amended complaint contains two causes of action for misrepresentation, negligent and intentional. The damages recoverable in either one are limited to those caused by the misrepresentation. (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364.) If the deception was intentional, punitive damages are available. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1241.) The parties bear their own attorney fees. (See *Bezaire v. Fidelity & Deposit Co.* (1970) 12 Cal.App.3d 888, 892; Code Civ. Proc., § 1021.) Also, Benson included causes of action under the Song-Beverly Consumer Warranty Act, sections 1790 et seq., and the ASFA,

---

[5] A plaintiff can seek attorney fees after prevailing under these statutes under Code of Civil Procedure section 1021.5, the private attorney general statute. The plaintiff must, however, satisfy the code section's criteria. (See *Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1365-1366, 1370; *Baxter v. Salutary Sportsclubs, Inc.* (2004) 122 Cal.App.4th 941, 947-948.)

[6] Benson also alleged a violation of Vehicle Code section 11711, but only against SCAS's bonding company.

[7] A consumer can "borrow" these Vehicle Code sections to state a cause of action under Business and Professions Code section 17204 as instances of unlawful business acts or practices. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; Bus. & Prof. Code, § 17200.) As noted above, however, the private plaintiff is restricted to restitution and injunctive relief.

sections 2981 et seq.  He moved for attorney fees, however, only under the CLRA and the ASFA.[8]

The ASFA requires an award of "reasonable attorney's fees and costs" to the party prevailing "on a contract or purchase order subject to" the Act.  (§ 2983.4.)  A violation of section 2982 subdivision (a), renders the contract unenforceable unless the violation is corrected as provided in section 2984.  (§ 2983, subd. (a).)  Section 2984 allows the holder of the contract to correct a failure to comply with the statutes under certain conditions and within certain time periods.  Otherwise the buyer is entitled to get his or her money back.  (§ 2983, subd. (a).)

We conclude that the trial court in this case did not abuse its discretion in deeming SCAS's January 2013 offer of correction appropriate, thereby negating Benson's ability to maintain a cause of action for damages under section 1782, subdivision (b).  SCAS in effect offered to undo the entire transaction and to pay Benson (really his lawyers) a reasonable sum for assembling a couple of largely boilerplate letters.  Filing a complaint *before* the response period expired was Benson's (really his lawyers') decision.  Instituting the lawsuit could easily have waited until after SCAS made its correction offer.  The fact that the lawsuit was filed before Benson heard back from SCAS strongly suggests that the correction offer, unless it was truly extravagant, would have had no effect on Benson's (really his lawyers') plan to sue.[9]

---

[8] The first amended complaint alleged violations of sections 2981.9 and 2982, subdivisions (a)(2) (a)(6)(D), (a)(6)(G), and (c) of the ASFA.  These sections deal with the information to be provided to the buyer in a conditional sales contract and with the contract's format.

There is no record of Benson's filing the ASFA affidavit required by section 2984.4, subdivision (c).  According to that subdivision, no proceedings under ASFA are to take place until the affidavit is filed.  In any event, Benson did not brief a denial of attorney fees under the ASFA as an issue on appeal.  (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue constitutes waiver on appeal].)

Benson did not make a motion for costs under Code of Civil Procedure sections 1032 and 1033.5, which, as the trial court pointed out, required filing a stand-alone memorandum of costs to begin the process.  (See Cal. Rules of Court, rules 3.1700 and 3.1702.)

[9] This inference is strengthened by the invoices Benson's counsel submitted along with the fee motion.  According to the relevant invoice, the two demand letters were drafted on the same day a "complaint for damages" was prepared.

10

As for giving up non-CLRA claims as part of the deal, which he argues renders the correction offer inappropriate, Benson has not shown these claims added any value to the claim that prompted the CLRA notice and that evoked the correction offer. "Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence." (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158.) The CLRA prohibits deception and permits recovery of punitive damages, so the two fraud claims added nothing to Benson's potential recovery. The ASFA claim allowed Benson to get his money back, a CLRA remedy SCAS was offering. The Vehicle Code claims did not permit any extra recovery, and the UCL and FAL claims permitted restitution (Bus. & Prof. Code, §§ 17203, 17535), which, again, SCAS was offering. The Song-Beverly Consumer Warranty Act permits a buyer to recover damages, "includ[ing] the rights of replacement or reimbursement" – exactly what Benson would have recovered under the CLRA. (§ 1794.) As the trial court observed, all of these claims were "inextricably intertwined with the CLRA claim and based on the same conduct." One might even go further and suspect they were included in the first amended complaint solely for their potential in terrorem effect.

Settlement deals routinely include mutual releases of all claims. SCAS would have been foolish indeed to correct the CLRA claim if eight other virtually identical claims were going forward notwithstanding the correction. Substantial evidence supported the trial court's exercise of discretion in finding that the other claims had little or no independent value.

Benson asserts that requiring him to give up these claims violates the CLRA prohibition against waiver of claims. There is no such prohibition. The CLRA prohibits waiving *CLRA* claims (§ 1751); it says nothing about waiving other kinds of claims.

11

Benson also argues, in essence, that the judgment *proves* his entitlement to maintain an action for damages as set forth in section 1782, subdivision (b). He got damages pursuant to the judgment, so he must have been entitled to get them. Hence the response to his notice letters must have been inappropriate. Because he got damages.

Whether the settlement awarded Benson damages is, in light of our conclusion regarding the attorney fees as discussed in the next section, a moot point. We note here, however, that what Benson got was a judgment pursuant to a settlement.[10] Nowhere is there any confession of liability by the settling defendants. Nowhere does the judgment provide that Benson was awarded damages under the CLRA or under any of the other causes of action. From all that appears in the record, the settlement figure could just as easily have reflected the defendants' lower end estimate of what it would cost them in legal fees to try the case. "Damages under the CLRA are a legal remedy, intended to compensate those who suffer actual damage." (*Leatherman, supra,* 135 Cal.App.4th at p. 695.) Nothing in the judgment indicated that Benson was being compensated for any actual damage, which compensation usually flows only one way. The settlement, however, required both Benson and the defendants to perform; he had to return the car and release his claims. (Cf. *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1154, disapproved on other grounds in *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1261 [plaintiff awarded attorney fees under CLRA and other statutes after evidentiary hearing in which trial court found him entitled to judgment on the merits].)

The written notice requirement is intended to forestall litigation, by requiring consumer and merchant to attempt to fix the problem before resorting to the

---

[10] The settlement agreement and judgment explicitly provided that the settling defendants could contest the attorney fee motion on any grounds, including the effect of the correction offer, so Benson's argument that the trial court should not have inquired into the appropriateness of the offer founders on the language of the judgment itself. A stipulated judgment is a contract, construed under ordinary contract rules. (*Jamieson v. City Council of the City of Carpenteria* (2012) 204 Cal.App.4th 755, 761.) This one allowed the defendants to assert the correction offer as a defense to the attorney fee motion, and they did.

courts. Precluding a merchant from obtaining an end to litigation that, in essence, consists of nine different versions of the same cause of action frustrates this intention. As Benson himself acknowledged, all his "causes of action arise from the same underlying 'common core of facts.'" It would be sensible, then, to settle all causes of action as a unit. At least, it is not an abuse of discretion for the trial court to regard the correction offer in that light. The court did not abuse its discretion in deciding that the correction SCAS offered was appropriate.

**II.          Are Attorney Fees Nevertheless Available?**

Section 1780, subdivision (a), sets out the remedies available to a consumer who has suffered damage as a result of an act declared unlawful in section 1770. These are (1) actual damages, (2) injunctive relief, (3) restitution of property, (4) punitive damages, and (5) any other relief the court deems proper. Section 1780, subdivision (e), requires an award of court costs and attorney fees to a "prevailing plaintiff in litigation filed *pursuant to this section.*" (Italics added.) We review the legal basis for an award of attorney fees de novo. (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176; *Corbett, supra,* 119 Cal.App.4th at p. 921.)

We conclude that if a suit for damages cannot be maintained under the CLRA because a merchant offered an appropriate correction in response to a consumer's notice, then a plaintiff cannot collect attorney fees for such a suit.[11] We interpret section 1782 to create a requirement analogous to exhaustion of administrative remedies (see, e.g., Gov. Code, §§ 12960, subd. (b), 12965, subd. (b) ), or to a demand on the board of directors before filing a shareholder's derivative suit (see Corp. Code, § 800, subd. (b)), or notification of a local public entity of a plaintiff's intent to sue for money or damages. (See Gov. Code, § 905; see also *Vasquez v. State of California* (2008) 45 Cal.4th 243,

---

[11]     Benson's briefs devote a great deal of space to the issue of whether he was a prevailing plaintiff. We need not address this issue. Assuming he was a prevailing plaintiff, he still could not maintain a CLRA claim for damages after the offer of an appropriate correction. (Cf. *Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512 [prevailing parties in real estate action may not recover fees because of refusal to mediate].)

13

252 [similar statutes].)  In all of these instances, a lawsuit cannot go forward until the potential plaintiff has received a response to a notice or the time for responding has expired.  If the deficiency is caught early enough, it can result in a dismissal on demurrer. (See *Myers v. Mobil Oil Corp.* (1985) 172 Cal.App.3d 1059, 1063 [administrative remedies]; *Charter Township of Clinton Police & Fire Retirement System v. Martin* (2013) 219 Cal.App.4th 924, 928-929 [demand or demand futility]; *Lewis v. City and County of San Francisco* (1971) 21 Cal.App.3d 339, 340 [notification of tort claim against public entity]; see also *Kagan v. Gibralter Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 590, overruled on other grounds in *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634 [CLRA action for damages will not lie if prospective defendant corrects wrongs].)  If the plaintiff sues without fulfilling this requirement, the lawsuits are fatally defective from the beginning.  It follows, then, that the plaintiff should not be able to make the defendants pay his or her attorneys for filing and maintaining such a suit.  Attorney fees are not recoverable in actions for damages under the CLRA unless the response to the notice letter is not an appropriate one or no response is forthcoming within the statutory time period.

Benson asserts that the CLRA is meant to protect consumers and awarding attorney fees in cases such as his promotes this purpose.  But the legislation actually has two purposes.  Protecting consumers is one; providing efficient and economical procedures to secure such protection is the other.  It is neither efficient nor economical to engage in protracted litigation and to run up attorney fees when an appropriate correction has been offered at the very outset.  As the trial court stated, "I don't think it's the purpose of the [CLRA] to have lawyers receive a windfall when they make such claims and the defendant – or potential defendant has an opportunity within 30 days to cure to avoid the result of being beset with large attorney fee costs."

14

To the extent that Benson's suit was one for damages, it should not have been filed after SCAS offered an appropriate correction, and he cannot require the defendants to pay attorney fees for a suit to obtain damages. In the absence of any briefing or argument on the issue, we do not here address the requirements for an attorney fee award based on a request for injunctive relief. (See §§ 1780, subd. (a), 1782, subd. (d).)

## DISPOSITION

The order denying appellant's motion for attorney fees and costs is affirmed. Respondent is to recover its costs on appeal.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.